Joseph N. BRANT, et al.

v.

The UNITED STATES.

No. 20–77.

United States Court of Claims.

April 18, 1979.

Robert A. Johnson, Washington, D. C., for plaintiff. Lutz B. Hoernecke, of counsel.

Robert M. Hollis, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, NICHOLS and BENNETT, Judges.

## OPINION

COWEN, Senior Judge.

Plaintiffs are all retired officers or noncommissioned officers who were employed pursuant to the provisions of 10 U.S.C. § 2031(d), and are presently serving or have formerly served as junior ROTC instructors at American high schools operated by the Department of Defense (DOD) on military bases in Europe. Prior to July 1975, each of them received as compensation an amount, which when added to his retirement pay, equaled the pay and allowance he would have received had he been on active duty; this amount included a Basic Allowance for Quarters (BAQ). In addition, each was furnished Government housing at no expense, or if none was available, was paid a Living Quarters Allowance (LQA).

On July 3, 1975 (55 Comp.Gen. 44), the Comptroller General issued a decision holding that under the provisions of 10 U.S.C. § 2031(d), plaintiffs were not entitled to receive the Basic Allowance for Quarters if they were occupying rent-free Government-furnished quarters. As a result of that decision, the DOD stopped the inclusion of BAQ or LQA in the compensation received by the junior ROTC instructors occupying Government housing. Also, the Department discontinued the payment of a combination of LQA and BAQ paid to those plaintiffs who were not assigned to Government housing—thereafter they received only BAQ.

In this suit, plaintiffs seek recovery of the additional allowances which they had received prior to the decision of the Comptroller General. The parties' cross-motions for summary judgment present only questions of law, and since we have concluded that the Comptroller General's decision is a correct interpretation of the applicable statute, we hold that plaintiffs are not entitled to recover.

## I.

The statutory authority under which plaintiffs were employed as junior ROTC instructors, is contained in 10 U.S.C. § 2031 (1970) and provides:

§ 2031. *Junior Reserve Officers' Training Corps.*

\*　　\*　　\*　　\*　　\*　　\*

(c) The Secretary of the military department concerned shall, to support the Junior Reserve Officers' Training Corps program—

(1) detail officers and noncommissioned officers of an armed force under his jurisdiction to institutions having units of the Corps as administrators and instructors;

\*　　\*　　\*　　\*　　\*　　\*

(d) Instead of, or in addition to, detailing officers and noncommissioned officers on active duty under subsection (c)(1), the Secretary of the military department concerned may authorize qualified institutions to employ, as administrators and instructors in the program, retired officers and noncommissioned officers \*　\* whose qualifications are approved by the Secretary and the institution concerned and who request such employment, subject to the following:

(1) Retired members so employed are entitled to receive their retired or retainer pay and an additional amount of *not more than* the difference between their retired pay and the active duty pay and allowances which they would receive if ordered to active duty, and one-half of that additional amount shall be paid to the institution concerned by the Secretary of the military department concerned from funds appropriated for that purpose.

(2) Notwithstanding any other provision of law, such a retired member is not, while so employed, considered to be on active duty or inactive duty training for any purpose. [Emphasis added.]

As shown, 10 U.S.C. § 2031(d)(1) expressly prescribes a limitation on the amount of compensation which such instructors may be paid. The language of the statute is clear and unambiguous. To prevail, plaintiffs must show that if they had been called to active duty, they would have been entitled to BAQ and at the same time to free Government housing. The conditions under which the payment of BAQ to active-duty personnel is made are set forth in 37 U.S.C. § 403 (1970). That section specifically provides that where a member of the uniformed services is assigned to quarters appropriate to his grade, rank or rating, and adequate for himself and his dependents, he is not entitled to a Basic Allowance for Quarters.

Plaintiffs' second contention, that when not assigned to free quarters, they are entitled to both BAQ and LQA, is likewise contrary to the language of the statute. LQA is the civilian counterpart to BAQ, and is provided to reimburse Federal civilian employees serving overseas for housing costs when not assigned to Government quarters. 5 U.S.C. § 5923(2). In essence, plaintiffs maintain they were entitled to a double housing allowance—the allowance provided for military personnel, as well as a similar allowance provided for civilian Government employees.

■■■ Generally, the language of the statute is the best indication of the legislative intent. Congress often expresses its purpose in the customary meaning of the language employed. When the requirements of a statute are detailed and specific, as they are in this case, they must be applied with precision. *Commissioner of Internal Revenue v. Gordon*, 391 U.S. 83, 91, 92, 88 S.Ct. 1517, 20 L.Ed.2d 448 (1968). Here, the limitation on the amount of allowances which plaintiffs were entitled to receive is couched in emphatic, mandatory language. In the face of such clarity, we cannot understand plaintiffs' contention that the statute does not set a ceiling on the allowances to which they were entitled.

II.

Normally, in a situation where the governing statute is as clear and explicit as it is here, there is no occasion to resort to the legislative history. However, plaintiffs have advanced an argument based on the provisions of 20 U.S.C. § 905 and 5 U.S.C. § 5923, both relating to allowances in lieu of free public housing for civilian teachers and other civilian employees working abroad. 20 U.S.C. § 905 provides:

(a) Under regulations which shall be prescribed by or under authority of the President, each teacher (other than a teacher employed in a substitute capacity) shall be entitled, in addition to basic compensation, to quarters, quarters allowance, and storage as provided by this section.

(b) Each teacher (other than a teacher employed in a substitute capacity) shall be entitled, for each school year for which he performs services as a teacher, to quarters *or* a quarters allowance equal to those authorized by the Act of June 26, 1930. [Emphasis added.]

5 U.S.C. § 5923 provides:

When Government owned or rented quarters are not provided without charge for an employee in a foreign area, one or more of the following quarters allowances may be granted when applicable:

\* \* \* \* \* \*

(2) A living quarters allowance for rent, heat, light, fuel, gas, electricity, and water, without regard to section 529 of title 31.

Plaintiffs contend that when Congress enacted 10 U.S.C. § 2031(d), dealing specifically with them, Congress did not intend to alter the provisions regarding the allowances provided for in 20 U.S.C. § 905 and 5 U.S.C. § 5923. From this it follows, they say, that in addition to the pay and BAQ provided by 10 U.S.C. § 2031(d), they are

entitled to receive the allowances, either LQA or free Government housing, provided by 5 U.S.C. § 5923 or 20 U.S.C. § 905(b).

The pertinent legislative history of Pub.L. 88–647, now codified as 10 U.S.C. § 2031(d), is contained in the following extract from the Comptroller General's decision:

The phrase "active duty pay and allowances" is neither defined in the law nor in the legislative history of that law. However, it is noted that the prior history of the program and the proposed legislative changes in the program which were introduced between 1950 and the introduction of H.R. 9124 in 1963 (which eventually became Public Law 88–647), reference was continually being made to the detailing of active duty personnel to the various educational institutions where JROTC units were maintained. While section 2031(c) carries forward this concept, the legislative history of H.R. 9124, indicates that considerable opposition to a continuation of a JROTC program existed. One of the objections apparently raised was the cost of the program in terms of the active duty personnel who were to be detailed as administrators and instructors. It appears that in response to such objections, the language presently contained in 10 U.S.C. § 2031(d)(1) was introduced and in H.Rep.No. 925, 88th Cong., 1st Sess. 24 (1963), the following explanation appears:

* * * The committee was of the opinion that the military departments should be permitted to utilize retired personnel * * * so as to minimize the drain of these programs on their active duty military personnel and also reduce the budgetary implications of these programs. Retired military personnel receive between 50 to 75 percent of their basic pay while on the retired rolls. The Government receives no particular benefit from this payment. Therefore, the committee believes that many retired officers would be desirous of volunteering for duty in connection with the ROTC program and, thus, permit the military departments to oper-

ate these programs with such retired personnel with consequent savings in both dollars and manpower. [55 Comp. Gen. at 47].

As indicated, the House Report reflects the desire of the military to utilize retired personnel in lieu of active-duty personnel, not only to reduce costs, but to relieve the drain on active-duty personnel. The report also shows the desire of Congress to utilize retired military personnel in order that the Government might derive some benefit from the retired pay received by these individuals. All of this reinforces the interpretation that the statute imposes a limitation on the allowances which the junior ROTC instructors are entitled to receive. Plaintiffs have cited no legislative history, nor have we found any, which supports their contentions.

### III.

Plaintiffs' next argument is based upon Army Regulation AR 145–2, par. 6–37, which states:

6–37. Deductions from instructors' wages.

The wages received by instructors are subject to the same deductions as all other wages in which an employer-employee relationship exists. Deductions for taxes, insurance, dues, fees, etc., are the responsibility of the school. Although an instructor may receive an amount "equal" to the military pay and allowances he would receive if on active duty, the payments he receives are not, in fact, military pay and allowances paid by the Army.

According to plaintiffs, this regulation demonstrates that the Department of the Army considered the additional amounts received by the ROTC instructors to be "wages" and not "allowances." The use of the conjunctive "and" between "military pay" and "allowances" defeats plaintiffs' contention that the compensation they received did not consist in any part of allowances. In any event, the regulation does not aid plaintiffs' case, because it is nothing more than a paraphrase of 10 U.S.C. § 2031(d)(2), which

states that the junior ROTC instructors employed under the statute are not "while so employed, considered to be on active duty or inactive duty training for any purpose."

In furtherance of their argument that the statute merely provides a formula for establishing wages and not allowances, plaintiffs rely on a letter ruling issued by the Internal Revenue Service on December 2, 1969, which stated that BAQ payments pursuant to 10 U.S.C. § 2031(d)(1) cannot be excluded from gross income under Treas. Reg. sec. 1.61–2(b), but must be included in gross income. The regulation provides:

> * * * Subsistence and uniform allowances granted commissioned officers, chief warrant officers, warrant officers, and enlisted personnel of the Armed Forces * * * and amounts received by them as commutation of quarters, are to be excluded from gross income. Similarly, the value of quarters or subsistence furnished to such persons is to be excluded from gross income.

The Internal Revenue Service letter is nothing more than a recognition that the retired ROTC instructors referred to in the letter were not actually on active duty and therefore, were not entitled to the exclusion which the regulation allows to active duty military personnel. The letter does not state that the BAQ payments received by the retired ROTC instructors were "wages" rather than "allowances."

## IV.

Plaintiffs also invoke the doctrine of estoppel against the Government as a basis for recovery. They contend that the defendant supplied them with literature which indicated that they would receive the additional compensation here claimed, and that the actions and conduct of Government officials prior to the time the Comptroller General issued his decision, estop the Government from denying plaintiffs the additional allowances they are seeking in this action.

We have carefully examined the documents upon which plaintiffs rely and have found nothing which states that the plaintiffs would be entitled to receive BAQ plus rent-free housing or an additional LQA. One of the documents relied on by plaintiffs is a letter of October 29, 1973, addressed to plaintiff, Joseph N. Brant, by the Chief, Dependent's Schools Teachers, Recruitment Branch. The letter states in part:

> Housing will be furnished by the Government at Government expense or you will receive living quarters allowance which usually covers expenses.

Another document relied on by the plaintiffs states in part:

> 6. Department of the Army approved retired instructors will be paid by the school in the amount which, when added to their retired pay, will equal the amount of their active duty pay and allowances exclusive of hazardous duty pay. "Active duty pay and allowances" means the current pay and allowances authorized for the rank or grade of the individual if he were called to active duty in his current rank or grade. "Allowances" include quarters and subsistence allowances for all individuals so employed and uniform maintenance allowance for retired enlisted personnel. Station housing and cost of living allowances may be included if such allowances would be paid to active duty personnel on duty at that institution. Special and incentive pays are excluded. Schools may pay retired instructors more than the amount specified above. The schools are responsible for determining the exact amount to be paid and for adjusting instructor's pay if legislation is passed changing retired or active duty pay. The wages received by retired instructors are subject to the same deductions as all other wages and are not considered military pay and allowances as paid by the Army.

However, assuming *arguendo* that the defendant had represented to the plaintiffs that they would receive LQA or free housing in addition to the BAQ, such representations would have been contrary to the provisions of 10 U.S.C. § 2031(d). Notwithstanding such statements, nor the fact that the defendant erroneously paid plaintiffs

additional allowances prior to the Comptroller General's ruling of 1975, plaintiffs are not entitled to recover, because of the now well established doctrine that the Government cannot be estopped by statements or actions of its agents from enforcing a law passed by Congress. *Montilla v. United States,* 457 F.2d 978, 198 Ct.Cl. 48, 63–64 (1972); *Parker v. United States,* 461 F.2d 806, 809, 198 Ct.Cl. 661, 667 (1972).

In *Parker,* where the plaintiff had much stronger grounds for asserting estoppel against the Government, we declared that "no official of the Navy [has] the authority to nullify or contradict the mandate of a statute."

### V.

■ Plaintiffs' final argument is that their Fifth Amendment rights of due process have been violated in that 10 U.S.C. § 2031(d) has been applied to preclude their receipt of LQA or free housing in addition to BAQ. All civilian Federal employees living in foreign areas receive quarters, or allowance in lieu of quarters, in addition to the pay they would normally receive in the United States. Plaintiffs contend that the Comptroller General's decision unfairly discriminates against them, because the junior ROTC instructors receive only the same pay as their counterparts in the United States and are not provided the additional allowances given to civilian Federal employees pursuant to 5 U.S.C. § 5923 and 20 U.S.C. § 905 for foreign service.

We reject this argument, because there is no factual basis for plaintiffs' contention that there is discrimination between the allowances paid to civilian employees and to junior ROTC instructors. As previously noted, 5 U.S.C. § 5923 and 20 U.S.C. § 905 provide that civilian teachers and other Federal employees are entitled to either free quarters or an allowance for quarters (LQA) when serving abroad. It is undisputed that the retired military personnel hired as junior ROTC instructors also receive ei-

ther rent-free quarters or an allowance for quarters during the period of their employment. Defendant informs us that the only difference between the two systems is that the military junior ROTC instructors receive a BAQ as their housing allowance, while civilian teachers receive an allowance designated as LQA. There may be some difference in the actual amount of money received, but plaintiffs' due process argument is not pitched on this difference.

Therefore, it is unnecessary for us to decide whether plaintiffs have discharged the difficult burden of showing a denial of due process under the standards laid down by the Supreme Court and this court. *See Puglisi v. United States,* 564 F.2d 403, 215 Ct.Cl. 86 (1977), *cert. denied* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *Bruinooge v. United States,* 550 F.2d 624, 213 Ct.Cl. 26 (1977).

### *Conclusion*

In accordance with the foregoing opinion, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted. Judgment is entered pursuant to Rule 102(d) that plaintiffs are not entitled to recover as a matter of law. However, in view of defendant's first counterclaim (asserted in its answer filed April 18, 1977), entry of judgment dismissing the petition will be deferred pending the disposition of the counterclaim,[1] which is hereby remanded to the Trial Division for trial or other resolution.

---

1. Defendant's second and third counterclaims against plaintiff Joseph N. Brant were voluntarily dismissed by defendant on March 23, 1979.