JOHN A. LYLE AND GLENNA LYLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7663–79.    Filed April 23, 1981.

John A. Lyle, pro se.
*Karen J. Simonson*, for the respondent.

RAUM, *Judge*: The Commissioner determined a $695 deficiency in petitioners' 1976 income taxes. The husband-petitioner (Col. Lyle) is a retired army officer who in 1976 served for 5 months as a Junior ROTC instructor in Odessa, Tex. At issue is whether a portion of the payments he received for such service under 10 U.S.C. sec. 2031(d) (1976) are excludable from gross income as a quarters or subsistence allowance, and whether petitioners are entitled to a deduction for either Col. Lyle's expenses in moving to Odessa in 1976 or his living expenses while employed in Odessa.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference.

At the time of the filing of their petition herein, petitioners were residents of El Paso, Tex. The principal issues herein relate to the employment of Col. Lyle, and he will sometimes be referred to as "petitioner."

Petitioner retired from active U.S. Army service in 1974, and was a retired military officer during 1976. From June of 1974 to August 1, 1976, he resided in Oxford, Miss., with his wife and three children.

In July of 1976, the Ector County Independent School District offered petitioner a position as a Senior Army Instructor for the Junior Reserve Officers' Training Corps (ROTC) program at

Permian High School, Odessa, Tex. for the 1976–77 school year, beginning on August 2, 1976. Col. Lyle accepted this employment and drove to Odessa carrying his clothing and other personal effects. He took up residence in Odessa as of August 1, 1976, and lived in a furnished apartment for approximately 1 month. He subsequently lived with two other persons in a furnished mobile home for approximately 4 months. Mrs. Lyle and petitioners' children remained in their home in Mississippi throughout 1976. Petitioners' furniture likewise remained in Mississippi.

When petitioner left for Odessa, he expected to remain employed with the school district for at least the school year; he did not contemplate returning to Oxford, Miss. However, in performing his duties at Permian High School, petitioner encountered problems with discipline of the students.[1] Some students complained to their parents, who in turn complained to the school principal. Despite petitioner's desire to "get this matter out in the open," the principal refused to reveal the names of the complainants. Thereafter, the regional commander, Brigadier General Childress, sent one Col. Rockhold to interview petitioner. In the course of the interview, petitioner "became rather outspoken with Colonel Rockhold," who then advised petitioner that he would recommend withdrawal of petitioner's certificate of eligibility to act as a Junior ROTC instructor. This would have resulted in the school district's termination of petitioner's employment. Petitioner's employment as a Junior ROTC instructor ended on December 31, 1976, although he continued to reside in Odessa until April 1, 1977.

In 1976, petitioner received his regular military retirement pay and $5,134.53 in gross pay from the Ector County Independent School District. On their 1976 joint income tax return, petitioners claimed a miscellaneous itemized deduction of $1,775, which purported to be the amount petitioner received as a subsistence and quarters allowance while acting as a Junior ROTC instructor. The Commissioner determined that this amount was not a subsistence and quarters allowance excludable

---

[1]Petitioner also had disagreements with the school officials with respect to the withholding of taxes on the portions of his salary that he perceived to be nontaxable quarters and subsistence allowances. However, these disagreements did not precipitate the termination of petitioner's employment.

from gross income under section 1.61–2(b), Income Tax Regs., because the legislation authorizing employment of retired officers as Junior ROTC instructors did not provide for such allowances; petitioners' taxable income was thus increased by $1,775.

Petitioners' 1976 return also claimed a total moving expense adjustment of $1,391. Most of this amount reflected transportation and temporary quarters expenses incurred in petitioner's move to Odessa. However, $304 of the total moving expenses reflected expenses incident to the sale of petitioners' former residence in Oxford, Miss. The Commissioner determined that no moving expense adjustment was allowable because petitioners "did not meet all the requirements of section 217 of the Internal Revenue Code." The Government now concedes the deductibility of $60 that was spent in 1976 as an advertising expense incident to the sale of petitioners' former residence; it does not concede the deductibility of the remainder of the $304, which purported to reflect Col. Lyle's expenses in returning to Oxford to assist in the sale of petitioners' residence.

## OPINION

1. *Exclusion for subsistence and quarters "allowances."*—Military personnel are entitled to exclude certain "allowances" from income under section 1.61–2(b), Income Tax Regs.,[2] which provides in relevant part as follows:

(b) *Members of the Armed Forces* * * * . Subsistence and uniform allowances granted commissioned officers * * * of the Armed Forces * * * and amounts received by them as commutation of quarters, are to be excluded from

---

[2]The exclusions for subsistence and quarters allowances were authorized by Treasury regulations and rulings in 1925 and 1926. See T.D. 3724, IV–2 C.B. 136 (1925); I.T. 2219, IV–2 C.B. 41 (1925), declared obsolete Rev. Rul. 67–466, 1967–2 C.B. 427; Mim. 3413, V–1 C.B. 29 (1926), modified Rev. Rul. 55–572, 1955–2 C.B. 45, and declared obsolete Rev. Rul. 69–31, 1969–1 C.B. 307. These rulings and regulations were issued as a result of the decision of the Court of Claims in *Jones v. United States,* 60 Ct. Cl. 552 (1925), allowing exclusion from income of the rental value of military quarters and amounts received as commutation of quarters by a major in active military service. See Rev. Rul. 60–66, 1960–1 C.B. 21, 22. The statutory foundation for this exclusion, at least insofar as it relates to allowances paid in cash, is not immediately apparent from the current Internal Revenue Code. See *Commissioner v. Kowalski,* 434 U.S. 77, 94 n. 29 (1977). However, Congress has in other statutes recognized the nontaxable nature of the basic allowance for quarters and the basic allowance for subsistence received pursuant to 37 U.S.C. secs. 402–403 (1976); in computing the "regular compensation" of a member of the uniformed services, 37 U.S.C. sec. 101(25) (1976) requires that the "Federal tax advantage" from the nontaxable character of such allowances be taken into account.

gross income. Similarly, the value of quarters or subsistence furnished to such persons is to be excluded from gross income.

At issue herein is whether the pay petitioner received for serving as a Junior ROTC instructor included such nontaxable allowances, or whether it was instead merely an amount received as compensation for services.

The Reserve Officers' Training Corps Vitalization Act of 1964, Pub. L. 88–647, sec. 101, 78 Stat. 1063 (codified at 10 U.S.C. sec. 2031 (1976)) (hereinafter the ROTC Vitalization Act) provided for the establishment of up to 1,200 Junior ROTC units at public and private secondary schools. The statute provides that the secretaries of the various military departments shall supply equipment and uniforms to the Junior ROTC units, and that officers and noncommissioned officers shall be detailed to serve as instructors and administrators of the units. See 10 U.S.C. sec. 2031(c)(1)–(2) (1976). Retired officers may serve as instructors and administrators in accordance with the following provisions of 10 U.S.C. sec. 2031(d) (1976):

(d) Instead of, or in addition to, detailing officers and noncommissioned officers on active duty * * * the Secretary of the military department concerned may authorize qualified institutions to employ, as administrators and instructors in the program, retired officers and noncommissioned officers * * * whose qualifications are approved by the Secretary and the institution concerned and who request such employment, subject to the following:

(1) Retired members so employed are entitled to receive their retired or retainer pay and an additional amount of not more than the difference between their retired pay and the active duty pay and allowances which they would receive if ordered to active duty, and one-half of that additional amount shall be paid to the institution concerned by the Secretary of the military department concerned from funds appropriated for that purpose.

(2) Notwithstanding any other provision of law, such a retired member is not, while so employed, considered to be on active duty or inactive duty training for any purpose.

In implementing the statute, the Defense Department has issued directives, as well as regulations,[3] specifying the manner in which retired officers utilized as Junior ROTC instructors will be paid by the employing secondary school. Department of Defense Directive No. 1205.13(V)(B)(3) (Mar. 7, 1975) provides that secondary schools participating in the Junior ROTC pro-

---

[3]See 32 C.F.R. sec. 111 (1980).

gram agree to pay retired officers in accordance with the following procedures:

a. Retired personnel shall receive their retired or retainer pay and an additional amount to be computed as the difference between such pay and the annual active duty pay and allowances for their pay grade, excluding hazardous duty pay, which they would receive if ordered to active duty.

b. The institution shall be considered the employing agency and shall pay the full additional amount due to the individual employee; one-half of the additional amount shall be refunded to the institution by the Secretary of the Military Department concerned from funds appropriated for that purpose.

c. The schedule of pay, the period of employment, and the terms of the employment contract will be at the discretion of the school system, provided that minimum requirements prescribed by this Directive are met.

Emphasizing the language in the statute and the Department of Defense directive specifying that the total compensation received by the retiree-instructors is to be the same as the amount "which they would receive if ordered to active duty," petitioner argues that the statute and directive establish a notion of "equitable parity" in the compensation of retired and active duty instructors. Petitioner accordingly contends that he should be entitled to an exclusion from income equal to the quarters and subsistence allowances received by active duty personnel of the same rank, since otherwise the disposable income he would receive from serving as a Junior ROTC instructor would be less than an active duty officer performing identical tasks. The Government contends that only active duty military personnel receive subsistence and quarters allowances which are excludable from gross income. Since 10 U.S.C. sec. 2031(d)(1976) specifies that retired officers serving as Junior ROTC instructors are not considered to be on active duty, the Government concludes that petitioner received no allowances excludable from gross income. Although petitioner, who appeared pro se, ably and forthrightly presented his arguments to the contrary, we find that he did not receive any quarters and subsistence allowances excludable from income under the income tax regulations.

An initial difficulty with petitioner's contentions is the source of the payments he received. Aside from his regular retired pay, which he was entitled to receive regardless of whether he performed any services, petitioner received no other compensation or allowances from the Federal Government. Indeed, 10 U.S.C. sec. 2031(d)(1976) makes it clear that although the various

military departments initially determine whether retired officers are qualified to serve as Junior ROTC instructors, such officers are employed by the institutions in which they teach. Department of Defense Directive 1205.13, quoted *supra* at page 673, specifies that the employing educational institution is free to determine the "schedule of pay * * * and the terms of the employment contract" of retired officers serving as Junior ROTC instructors, provided only that the "minimum requirements" of the directive are met. But the only limitations on the discretion of local school authorities are that they must pay the instructors the full "additional amount" specified in the statute and that the instructors may not be required to perform services beyond the scope of Junior ROTC instruction, unless the school separately contracts with the instructor for the performance of such services and the local school bears the entire cost of such services.[4]

Although the Federal Government reimburses the school districts for one-half the "additional amount" paid to the retired officers, the responsibility for disbursing these funds and determining the ultimate amount of the retired officers' compensation rests with the employing school. Since the school, and not the Federal Government, is the employer, it is difficult to see how any compensation petitioner received from the school could be considered a subsistence or quarters allowance received from the Federal Government. We find that while petitioner served as a Junior ROTC instructor, his sole employment relationship was with the Ector County School District and that he did not receive any nontaxable quarters or subsistence "allowances" from the district.

Moreover, we think that Congress never intended to pay any nontaxable "allowances" to retired officers serving as Junior ROTC instructors. Officers entitled to "basic pay" are entitled to a basic allowance for subsistence, in lieu of the provision of

---

[4]Department of Defense Directive 1205.13(V)(B)(4) (Mar. 7, 1975) provides that the employing institution shall:

"Contract separately with individual Junior ROTC instructors for any additional duties desired by the institution beyond those connected with the instruction, operation, and administration of the Junior ROTC program at no cost to the Military Department. Such additional services must be performed outside the scope of Junior ROTC duties and hours. (This does not preclude ROTC instructors from serving on routine committees or performing other extra-curricular duties normally performed by other faculty members.)"

meals in kind, and a basic allowance for quarters, unless quarters provided by the military are occupied by the officer. See 37 U.S.C. secs. 402(c), 403 (1976). However, petitioner does not qualify for these allowances because entitlement to "basic pay" is restricted to members of the uniformed service on "active duty," 37 U.S.C. sec. 204(a) (1976), and the statute authorizing retired officers to serve as Junior ROTC instructors expressly provides that such retired officers are not "considered to be on active duty * * * for any purpose." 10 U.S.C. sec. 2031(d)(2) (1976), quoted *supra* at page 672. Thus, if petitioner is entitled to any "allowances," they must be provided by the provisions of the ROTC Vitalization Act. However, we do not construe this statute to provide for the payment of nontaxable allowances to retired officers serving as Junior ROTC instructors.

The statute provides that retired officers are to receive their customary retired pay "and an additional amount of not more than the difference between their retired pay and the active duty pay and allowances which they would receive if ordered to active duty, and one-half of that additional amount shall be paid to the institution concerned by the Secretary." 10 U.S.C. sec. 2031(d)(1) (1976). Fairly construed, this statutory provision does no more than establish a formula for computing the minimum "additional amount" of compensation the retiree-instructors are entitled to receive from the employing educational institution and the maximum portion of that "additional amount" that will be paid by the Federal Government. To be sure, the formula includes "allowances," as well as the active duty pay, to which petitioner would be entitled if on active duty. But we fail to see how the inclusion of an allowances component in the formula requires that petitioner be deemed to receive nontaxable allowances any more than he can be deemed to receive the full amount of taxable basic pay to which he would be entitled if on active duty. Petitioner in fact received neither allowances nor basic pay; he received his regular military retirement pay from the Federal Government, and the school district paid him an additional amount of compensation for serving as a Junior ROTC instructor, partly funded by the Federal Government. The plain language of 10 U.S.C. sec. 2031(d) (1976) does not contain any authorization for the Federal Government to pay nontaxable quarters and subsistence "allowances" to retired

officers serving as Junior ROTC instructors, and in our judgment petitioner received no such allowances in 1976.

Further support for the conclusion reached above on the basis of the statutory language is afforded by the legislative materials relating to the ROTC Vitalization Act. The legislative history does not suggest that Congress intended to establish "parity" between active duty and retired officers serving as Junior ROTC instructors; instead, retired officers were to be utilized in order to permit expansion of the Junior ROTC program at a lesser cost and with fewer drains on active duty military strength than would be required if the program were staffed by active duty personnel. At the time the legislation was considered, retired armed forces personnel were entitled to receive retired pay of between 50 and 75 percent of their basic pay. See S. Rept. 1514, 88th Cong., 2d Sess. (1964), reprinted in [1964] U.S. Code Cong. & Adm. News 3943, 3944; H. Rept. 925, 88th Cong., 1st Sess. 24 (1963). The additional payment from the employing school, partly funded by the Defense Department, was intended by the proponents of the legislation to facilitate the employment of retired personnel in the Junior ROTC program. See 110 Cong. Rec. 22975–22976 (1964) (remarks of Senator Russell). Considerable cost savings were envisioned by the sponsors of the legislation; if retired personnal drawing 75 percent of their active duty pay could be induced to serve, the Government could obtain the services of a retired officer for an additional expenditure of only 12½ percent of the cost of pay and allowances of a comparable officer on active duty.[5] See 110 Cong. Rec. 14686 (1964) (remarks of representative, Hebert). Thus, it appears that the "additional amount" paid to retired officers was not intended to provide either basic pay or allowances to reimburse retired officers serving as Junior ROTC instructors for their costs for meals and quarters. Instead, the "additional amount" was designed as an incentive payment to induce retired personnel to accept employment as Junior ROTC instructors so that the Government could realize economies in staffing the Junior ROTC program. Accordingly, the "additional amount" petitioner received from the school district was clearly in the nature of compensation, rather than a nontaxable

---

[5]The Federal payment to the school district would of course be correspondingly higher for retirees receiving retirement pay of less than 75 percent of their active duty pay.

quarters and subsistence allowance. Certainly, nothing in the legislative history called to our attention even remotely suggests that a portion of the retired officer's compensation is to be treated as nontaxable.

In light of the statutory language, as well as the legislative history, we find that petitioner received no nontaxable quarters or subsistence allowances as a result of his employment as a Junior ROTC instructor in 1976. Accord, *Sweeney v. United States,* an unreported case (N.D. Ga. 1974, 34 AFTR 2d 74-5700, 74-5701-74-5703, 74-2 USTC par. 9672 at 85,161-85,162); *Scott v. United States,* an unreported case (D. S.C. 33 AFTR 2d 74-858, 74-860-74-862, 74-1 USTC par. 9281 at 83,587-83,589); Rev. Rul. 71-307, 1971-2 C.B. 78.

Petitioner argues that *Brant v. United States,* 220 Ct. Cl. 65, 597 F.2d 716 (1979), is contrary to our decision herein. In *Brant,* the Court of Claims held that retired officers employed as Junior ROTC instructors at Department of Defense operated high schools overseas were not entitled to receive *both* rent free quarters or a living quarters allowance *and* the basic allowance for quarters included in the formula in 10 U.S.C. sec. 2031(d)(1) (1976), quoted *supra* at page 672. The court construed the statute as imposing a ceiling on the allowances to which the retired officers were entitled. See 597 F.2d at 718-719. Petitioner argues that this construction of the statute indicates that retired officers necessarily receive nontaxable allowances whenever they receive payments pursuant to 10 U.S.C. sec. 2031(d) (1976). Although certain language in the opinion of the court in *Brant* might be read as supporting petitioner's view, we do not regard that case as controlling here. First of all, the Court of Claims did not purport to determine the tax consequences of the receipt of the "additional amount" under 10 U.S.C. sec. 2031(d) (1976)— indeed, the court appears to have assumed that the amounts received were taxable because the retired officers were not on active duty. See 597 F.2d at 720. Moreover, the Defense Department was clearly the employer of the retired officer in *Brant,* whereas, petitioner herein was employed by the Ector County School District, which paid and determined his salary, subject only to Defense Department guidelines. Whether quarters furnished by the Defense Department or payments in lieu thereof, in the circumstances of the *Brant* case, are tax free,

presents a question that is quite different from the issue before us.

Petitioner also contends that the Government's position involves violations of his rights under various constitutional provisions. We find the point to be without merit. His principal complaint is that because he receives no nontaxable quarters and subsistence allowances, he receives less pay after taxes than comparable active duty officers serving as Junior ROTC instructors. However, "a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6 (1970). Here, the legislative classification is justified because the Armed Services determine where active duty personnel will be stationed and accordingly customarily provide housing and subsistence, or allowances therefor, to active duty personnel; retired personnel are obliged to provide for these expenses out of their retired pay because they live and work wherever they choose. The failure to provide nontaxable allowances to retired personnel serving as Junior ROTC instructors is rationally related to the legislative objective of administering the Junior ROTC program at the lowest cost to the Government. Petitioner voluntarily accepted employment as a Junior ROTC instructor, and the failure of Congress to provide him with nontaxable housing and subsistence allowances did not violate any of his rights under the Constitution.

2. *Moving expenses.*—We find that petitioner established a new residence in Odessa in 1976 and is entitled to deduct the travel and temporary quarters expenses incurred in his move to Odessa. See sec. 217(b)(1)(B)-(D), I.R.C. 1954. The Government contends that petitioner is not entitled to the deduction because he was not employed in Odessa for 39 weeks, as required by section 217(c)(2), I.R.C. 1954. However, section 217(d)(1)(B), I.R.C. 1954, provides that the 39-week rule does not apply in cases where the taxpayer is prevented from satisfying the requirement because of the involuntary termination of his employment. We find that petitioner could reasonably have expected to satisfy the 39-week requirement when he commenced work and that he was involuntarily separated from his employment with the school district as a result of the actions of Col. Rockhold. Accordingly, petitioner is entitled to deduct his

expenses for transportation and temporary quarters as moving expenses under section 217.

The Government has conceded that of the remaining $304 of petitioner's claimed moving expense deduction, he is entitled to deduct $60 as an advertising expense incident to the sale of petitioners' residence. Petitioner contends that the remainder of the $304, which purportedly represents his expenses of travel between Odessa and Oxford, Miss., in December of 1976 to arrange for the sale of petitioners' residence, is properly deductible as a moving expense. However, deduction of such travel expenses is not allowable under section 1.217–2(b)(5), Income Tax Regs., which makes clear that deductible moving expenses do not include "expenses for trips for purposes of selling property, expenses of trips to the former residence by the taxpayer pending the move by his family to the place of residence." See also sec. 1.217–2(b)(4), Income Tax Regs. Nor is this the type of deductible residence sales expense contemplated by section 1.217–2(b)(7), Income Tax Regs.[6] Accordingly, except for the $60 conceded by the Government, petitioners are not entitled to deduct the $304 claimed as moving expenses.

In light of our finding that petitioner is entitled to a moving expense deduction for bona fide expenses incident to his move to Odessa in 1976, we need not address petitioner's alternative contention that his living expenses in Odessa are deductible as expenses incurred while "away from home."

*Decision will be entered under Rule 155.*

---

[6]Sec. 1.217–2(b)(7), Income Tax Regs., provides in relevant part as follows:

(7) *Qualified residence sale, purchase, or lease expenses.* Qualified residence sale * * * expenses * * * are only reasonable amounts paid or incurred for any of the following purposes:

(i) Expenses incident to the sale or exchange by the taxpayer or his spouse of the taxpayer's former residence which * * * would be taken into account in determining the amount realized on the sale * * * of the residence. These expenses include real estate commissions, attorneys' fees, title fees, escrow fees, so-called "points" or loan placement charges which the seller is required to pay.