831 F.2d 1043
 ALASKAN ARCTIC GAS PIPELINE COMPANY, Northern Border
Pipeline Company, Pacific Gas Transmission Company and
Pacific Gas and Electric Company, and Pacific Interstate
Transmission Company, Plaintiffs-Appellees,
v.
The UNITED STATES, Defendant-Appellant.
 No. 87-1192.
 United States Court of Appeals,
Federal Circuit.
 Oct. 20, 1987.
 
 George M. Beasley, III, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief was Kristina Clark, Dept. of the Interior, Washington, D.C., of counsel.
 William W. Brackett, Washington, D.C., argued for appellees.
 Before DAVIS, SMITH, and NEWMAN, Circuit Judges.
 EDWARD S. SMITH, Circuit Judge.
 
 
 1
 The proceeding before us involves the Department of the Interior's (Interior) authority under the Independent Offices Appropriation Act (IOAA)[1] and the 1973 amendment to the Mineral Lands Leasing Act (MLA)[2] to recover, pursuant to Interior's regulations implementing these statutes (1975 implementing regulations),[3] the processing costs of applications for gas pipeline rights-of-way across federal lands (application-processing-costs). The United States (Government) appeals from the grant of summary judgment by the United States Claims Court in Alaskan Arctic Gas Pipeline Co. v. United States[4] denying Interior's authority under the IOAA and the 1973 amendment to the MLA to recover application-processing-costs incurred subsequent to the enactment of the 1973 amendment to the MLA but prior to the promulgation of the 1975 implementing regulations. The Claims Court held that Interior's authority under these statutes to recover such costs exists only pursuant to regulations implementing these statutes in effect at the time the costs in issue are incurred. We affirm.
 
 I. Issue
 
 2
 The principal issue on appeal is whether the Claims Court erred, as a matter of law, in holding that Interior's authority, pursuant to the IOAA and the 1973 amendment to the MLA, to recover right-of-way application-processing-costs extends only to the recovery of those costs incurred at a time the regulations implementing these statutes are in effect.
 
 II. Background
 
 3
 The Claims Court, deciding this case on cross motions for summary judgment, granted motions submitted by both parties. Only the Government appeals to this court from the grant of summary judgment against it. For purposes of this appeal, the following facts are significant.
 
 
 4
 Alaskan Arctic Gas Pipeline Company, Northern Border Pipeline Company, Pacific Gas Transmission Company, Pacific Gas and Electric Company, and Pacific Interstate Transmission Company (the consortium) are a segment of a larger group of gas pipeline companies whose organizational purpose was to provide various component pipelines to complete the Trans-Alaska/Canada/United States Gas Pipeline for the delivery of natural gas from the Prudhoe Bay oil and gas field to market areas in the Lower Continental United States. The intended route of the pipeline required the pipeline to traverse federal lands, state-owned lands, and lands owned by private individuals. Prior to initiating construction on federal lands of the natural gas pipeline delivery system, each participating contractor was required by both the IOAA and the 1973 amendment to the MLA to submit to Interior an application for a right-of-way across these lands. In 1974, each member of the consortium filed its application.
 
 
 5
 Beginning in 1975, Interior sought from the members of the consortium reimbursement, pursuant to the regulations promulgated under the IOAA and the 1973 amendment to the MLA, of Interior's costs in processing the consortium's applications for pipeline rights-of-way across federal lands. The consortium eventually was assessed application-processing-costs totaling approximately $5.2 million.
 
 
 6
 The consortium, paying all but $257,219.41 of the assessed processing costs, brought action in the United States Claims Court against the United States to recover $4,053,528.42 of the amount already paid to Interior as reimbursement for application-processing-costs. The Government responded that it assessed the costs of processing the consortium's applications in full conformity with its delegated authority under the IOAA and the 1973 amendment to the MLA. In addition, the Government counterclaimed for the balance of the assessed costs, $257,219.41, plus interest. The parties filed cross motions for summary judgment.
 
 
 7
 In considering the cross motions for summary judgment, the Claims Court bifurcated the liability issues into two categories: (1) application-processing-costs incurred by Interior subsequent to the enactment of the 1973 amendment to the MLA and prior to June 1, 1975, the effective date of Interior's regulations implementing the statutory provisions of the IOAA and the 1973 amendment to the MLA; and (2) application-processing-costs incurred by the Government subsequent to June 1, 1975. The Claims Court granted the consortium's motion for summary judgment to the extent the consortium had been assessed fees relative to costs incurred prior to June 1, 1975, the effective date of the 1975 implementing regulations. The Claims Court, relying on the decision of the United States Court of Claims in Alyeska Pipeline Service Co. v. United States (Alyeska I),[5] held that, if the IOAA or the 1973 amendment to the MLA was to be the source of Interior's authority to recover application-processing-costs, the authority could only be exercised pursuant to the existence of implementing regulations in effect at the time the costs in issue were incurred by Interior. The Claims Court granted the Government's motion for summary judgment with regard to the amount of those fees assessed relative to costs incurred on and subsequent to June 1, 1975, the effective date of the 1975 implementing regulations. Only the Government appeals to this court from the grant of summary judgment against it.
 
 
 8
 For the reasons set out below, we hold that the Claims Court did not err by denying recovery pursuant to the 1975 implementing regulations promulgated under the IOAA and the 1973 amendment to the MLA of application-processing-costs incurred by Interior subsequent to the enactment of the 1973 amendment to the MLA but prior to the promulgation of the 1975 implementing regulations. We address no other issues that were before the Claims Court in this case.
 
 III. Analysis
 
 9
 Judicial review of the issue on appeal before us requires us to construe the congressional intent underlying the IOAA and the 1973 amendment to the MLA. The statutory provisions of both the IOAA and the 1973 amendment to the MLA establish Interior's authority to obtain reimbursement for costs incurred in processing applications for rights-of-way across federal lands. The IOAA, enacted in 1951, authorizes Interior to obtain reimbursement of costs incurred in issuing licenses and permits only pursuant to implementing regulations:[6]
 
 
 10
 Sec. 483a. Services as self-sustaining; uniformity; regulations; deposit in Treasury; effect on other laws
 
 
 11
 It is the sense of the Congress that any * * * license, permit, * * * or similar thing of value or utility * * * provided, granted, prepared, or issued by any Federal agency * * * to or for any person * * * shall be selfsustaining to the full extent possible, and the head of each Federal agency is authorized by regulation * * * to prescribe therefor such fee, charge, or price * * * as he shall determine * * * to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts * * *.
 
 
 12
 The MLA was amended in 1973 by the enactment of the Trans-Alaska Pipeline Act to provide for reimbursement to Interior by an applicant of application-processing-costs. Unlike the statutory language of the IOAA, the statutory language of the 1973 amendment to the MLA does not expressly authorize reimbursement of application-processing-costs only pursuant to implementing regulations.[7]
 
 
 13
 (l) Reimbursement of costs
 
 
 14
 The applicant for a right-of-way or permit shall reimburse the United States for administrative and other costs incurred in processing the application, and the holder of a right-of-way or permit shall reimburse the United States for the costs incurred in monitoring the construction, operation, maintenance, and termination of any pipeline and related facilities on such right-of-way or permit area and shall pay annually in advance the fair market rental value of the right-of-way or permit, as determined by the Secretary or agency head.
 
 
 15
 Although Interior could have promulgated implementing regulations requiring applicants for licenses and permits to reimburse it for all expenses incurred in processing their applications, the only regulation that Interior adopted prior to 1975 provided for a minimal application filing fee.[8] In 1975, however, Interior first promulgated the current comprehensive regulation that provides for reimbursement of all expenses, including the cost of the environmental impact statement.[9]
 
 
 16
 It is well established, in cases involving statutory construction, that the statutory language itself is the best indication of congressional intent.[10] However, if the bare language of the statute fails to provide adequate guidance or if a literal interpretation of the statute would lead to an incongrous result, the court must resort to the purpose and legislative history of the statute to determine the intent of Congress in enacting the statute.[11] Notwithstanding the guidance provided by the statutory language itself or by its legislative history, this court is bound, in performing statutory construction, by case law precedent developed by it and by its predecessor courts.[12]
 
 
 17
 In construing the statutory language and legislative history of both the IOAA and the 1973 amendment to the MLA in the course of resolving the specific issue on appeal, we are bound by the statutory construction established in the interpretive case law of the United States Court of Claims decisions in Alyeska I[13] and Alyeska Pipeline Service Co. v. United States (Alyeska II).[14] A careful review of the specific facts, issues, and holdings of those cases will enable us to avoid the pitfall of erroneously construing the cases as deciding an issue not before the Court of Claims in those proceedings.
 
 
 18
 The history of the Alyeska litigation began in 1969 when the plaintiffs (Alyeska) filed an application with Interior for a right-of-way to build a pipeline to transport crude oil across Alaska. In January 1974, Alyeska and Interior entered into an agreement granting the right-of-way. Subsequent to the transition quarter following fiscal year 1976, Interior billed to Alyeska $38,930,438 in application-processing-costs and fees. Of this total, more than $12 million, which Alyeska paid, represented costs incurred by Interior prior to the enactment of the 1973 amendment to the MLA. Alyeska also paid an additional $13,691,980 for costs and fees incurred subsequent to the enactment of the 1973 amendment to the MLA but prior to the promulgation of the 1975 implementing regulations.
 
 
 19
 Alyeska, in August 1978, brought action in the Court of Claims seeking a refund from the United States of certain costs and fees paid as reimbursement to Interior pursuant to obtaining the right-of-way. In February 1979, Alyeska amended its petition to contain three claims: claim 1 sought a refund of the entire $12,253,730 payment made to Interior for costs incurred prior to the passage of the 1973 amendment to the MLA on grounds that regulations did not exist, at the time those costs were incurred, authorizing the collection of that sum; claim 2 was merely an alternative claim to claim 1; and claim 3 sought recovery of specific fees paid for costs incurred subsequent to the passage of the 1973 amendment to the MLA. Claim 3, however, did not challenge Interior's authority under the IOAA or the 1973 amendment to the MLA to charge Alyeska for costs and fees incurred subsequent to the passage of the 1973 amendment to the MLA and prior to the promulgation of the 1975 implementing regulations.
 
 
 20
 The Court of Claims determined that Interior was not authorized by the IOAA to collect the $12,253,730 from Alyeska because these costs were incurred at a time prior to the promulgation of the 1975 implementing regulations.[15]
 
 
 21
 The pipeline right of way the plaintiffs received was a "license, permit ... or similar thing of value or utility." The statute therefore would have authorized the Secretary to impose a fair and equitable "fee, charge or price" "therefor" if he had "authorized [such assessment] by regulation." During the period the government incurred the expenses involved in this litigation, however, the Secretary had not so authorized the fees here in dispute. * * * Thus, the Secretary's imposition of the fees here involved was not in accordance with or authorized by the Independent Offices Appropriation Act, and under that act was invalid. [Emphasis supplied.]
 
 
 22
 This statutory interpretation clearly establishes that Interior's authority under the IOAA to obtain reimbursement of application-processing-costs extends only to those costs incurred at the time implementing regulations are in effect.
 
 
 23
 The Government, in Alyeska I, argued that the statute authorizing Interior's recovery of application-processing-costs was the 1973 amendment to the MLA and not the IOAA. The Government asserted that the 1973 amendment to the MLA authorized cost recovery without first promulgating implementing regulations.
 
 
 24
 The Court of Claims rejected this argument on two alternate grounds:[16]
 
 
 25
 The government's argument has two fatal flaws. (A) The reimbursement requirement in section 185(1) [of the 1973 amendment to the MLA] does not override the requirement in the Independent Offices Appropriation Act that the reimbursable fees for licenses and permits be "authorized by regulation." (B) In any event, section 185(l ) does not apply retroactively to require the reimbursement of the expenses the United States incurred in processing the trans-Alaska pipeline permit before the effective date of that section. [Emphasis supplied.]
 
 
 26
 Notwithstanding the failure of the 1973 amendment to the MLA to expressly condition Interior's authority to recover costs on Interior's promulgation of implementing regulations, the Court of Claims expressly construed the 1973 amendment to the MLA as requiring that Interior's authority under the 1973 amendment to the MLA to recover application-processing-costs must be read in conjunction with the expressed requirement of the IOAA that implementing regulations be in effect at the time the costs sought to be recovered are incurred.
 
 
 27
 Subsequent to the Court of Claims decision in Alyeska I, Alyeska brought a separate action in the Court of Claims against the United States seeking the recovery of fees paid after the enactment of the 1973 amendment to the MLA and before the promulgation of the 1975 implementing regulations.[17] Alyeska contended that these charges were invalid because they were incurred by Interior prior to the promulgation of the implementing regulations. Recognizing that both the claims in Alyeska I and the claim in Alyeska II were based upon the same legal theory, i.e., Interior was not authorized under either the IOAA or the 1973 amendment to the MLA to recover application-processing-costs because the costs in issue were incurred at a time when there were no implementing regulations in effect, the Court of Claims held that Alyeska impermissibly split its cause of action between Alyeska I and Alyeska II and, therefore, was barred from asserting its claim in Alyeska II.[18]
 
 
 28
 Notwithstanding that the specific issue now on appeal before this court was never reached by the Court of Claims in the Alyeska litigation, application of the statutory construction set forth by the Court of Claims in the Alyeska litigation to the case before us leads to our conclusion that Interior is not authorized under either the IOAA or the 1973 amendment to the MLA to seek reimbursement from the consortium for application-processing-costs incurred subsequent to the enactment of the 1973 amendment to the MLA and prior to the promulgation of the 1975 implementing regulations. The Court of Claims' statutory construction of the IOAA and the 1973 amendment to the MLA in Alyeska I expressly holds both that Interior is authorized to recover application-processing-costs under the IOAA only pursuant to regulations in effect at the time the costs in issue are incurred and that the 1973 amendment to the MLA must be read in conjunction with the regulation requirement of the IOAA. Here, because the regulations providing for recovery of application-processing-costs were not promulgated until 1975, any costs incurred prior to 1975 were not incurred at a time regulations requiring reimbursement were in effect. Accordingly, we are constrained, by the statutory construction of our predecessor court, to hold that Interior was not authorized to recover from the consortium application-processing-costs incurred by Interior subsequent to the enactment of the 1973 amendment to the MLA and prior to the promulgation of the 1975 implementing regulations.
 
 
 29
 The Government argues that reliance on Alyeska I is unfounded because the Court of Claims in Alyeska I, as recognized by the Court of Claims in Alyeska II, did not address the specific issue now on appeal. The Government would have us consider to be dicta any language in Alyeska I that could be read as questioning Interior's authority under the IOAA and the 1973 amendment to the MLA to recover the costs at issue on appeal. We disagree.
 
 
 30
 Although a prior case construing a particular statute fails to address the specific issue raised in a subsequent proceeding, the statutory construction and implications therefrom established in the prior case must be given effect in the subsequent proceeding.[19] Because the Court of Claims is our predecessor court, the statutory construction by the Court of Claims in Alyeska I of the IOAA and the 1973 amendment to the MLA is binding on us as precedent.[20]
 
 
 31
 The Government further contends that Interior's authority under the IOAA and the 1973 amendment to the MLA to obtain pursuant to implementing regulations reimbursement of application-processing-costs extends to recovery of those costs incurred prior to the promulgation of implementing regulations when the costs in issue resulted from processing an application that was pending on the effective date of the implementing regulations. The Government, in effect, would have us distinguish this appeal from Alyeska I on grounds that, here, the consortium's applications were pending on the effective date of the 1975 implementing regulations, whereas, in Alyeska I, all costs had been incurred prior to the effective date of the 1975 implementing regulations. We fail to attach significance to this distinction.
 
 
 32
 The Court of Claims' construction in Alyeska I of the IOAA and the 1973 amendment to the MLA holds that Interior is authorized to recover pursuant to the IOAA and the 1973 amendment to the MLA only those costs incurred at the time the implementing regulations are in effect. In contrast, the Government's asserted distinction would authorize recovery of those costs incurred prior to the implementing regulations being in effect on grounds that such costs were incurred pursuant to processing a right-of-way application that was pending on the effective date of the 1975 implementing regulations. Such an interpretation of the IOAA and the 1973 amendment to the MLA would clearly sidestep the congressional intent underlying these statutes as recognized by the Court of Claims in Alyeska I:[21]
 
 
 33
 In the present case we have held that section 185(l ) [of the 1973 amendment to the MLA] permits the Secretary to require reimbursement of costs the government has incurred only if he acts pursuant to regulation and only for expenses incurred after the effective date of the statute. These limitations are designed for the benefit of the applicants for and holders of rights of way and permits and not for the benefit of the government. These two requirements--promulgation of regulations and the prospective operation of the authorization--are intended to give applicants and permittees the opportunity to be heard before the amount of reimbursement is fixed and advance notice of the expenses they will incur if their application is granted. * * * [Emphasis supplied.]
 
 
 34
 The Government's distinction denies the applicant for a right-of-way, whose application happens to be pending on the effective date of the implementing regulations, both the opportunity to be heard and the advance notice of expenses the applicant will incur for those costs incurred prior to the effective date of the implementing regulations.
 
 
 35
 The Government asserts that the issue in this case is not whether Congress intended that regulations promulgated pursuant to the IOAA and the 1973 amendment to the MLA be "retroactively applied"; rather, the real issue is whether Congress' delegation of authority to the Secretary of the Interior pursuant to these two statutes is sufficiently broad to allow him to promulgate a retroactive regulation. Resolving its statement of the issue in the affirmative, the Government cites numerous examples of statutes authorizing agencies to recover pursuant to regulations costs, fees, and taxes, for the time period subsequent to the enactment of the authorizing statute and prior to the promulgation of the implementing regulations. This argument is not persuasive.
 
 
 36
 Although we recognize that it is within the power of Congress to enact statutes granting an agency authority to assess costs and fees pursuant to regulation for the period subsequent to the enactment of the governing statute but prior to the promulgation of the implementing regulation,[22] such congressional intent must be evidenced either by the statutory language itself, the legislative history accompanying the statute, or binding case law precedent construing the statute. Here, we conclude that allowing Interior to recover costs incurred prior to promulgating the implementing regulations for applications pending at the time the regulations became effective would clearly breach the congressional intent underlying the IOAA and the 1973 amendment to the MLA, as construed by the Court of Claims, that authority to recover application-processing-costs extends only to the recovery of those costs incurred at the time regulations implementing these statutes are in effect.
 
 
 37
 Finally, the Government contends that Interior's application of the 1975 implementing regulations, which application provides for the recovery of costs incurred subsequent to the enactment of the 1973 amendment to the MLA and prior to the promulgation of the 1975 implementing regulations, is entitled to great deference by the reviewing court. The Government asserts that the Claims Court erred by not upholding Interior's application of its own regulations promulgated pursuant to the governing statutes when a reasonable basis existed for Interior's action. We see no merit in this argument.
 
 
 38
 We agree with the Government's citation of the judicial standard of review of an agency's application of its own regulations; however, this standard of review only is appropriate when the reviewing court initially determines that the agency's application of its regulations is consistent with Congress' intent underlying the governing statute.[23] This court will not defer to an agency's interpretation of a statute or an agency's application of regulations promulgated pursuant to a statute if the agency action either " 'contravenes clearly discernible legislative intent' or is otherwise unreasonable."[24] An agency's regulation promulgated pursuant to a statute is not a reasonable interpretation of the statute unless the regulation "harmonizes with the statute's 'origin and purpose.' "[25]
 
 
 39
 The Court of Claims construction of the IOAA and the 1973 amendment to the MLA in Alyeska I held that Congress did not contemplate under either the IOAA or the 1973 amendment to the MLA that recovery of application-processing-costs was authorized for costs incurred prior to the effective date of implementing regulations. Because Interior's application of its regulations is contrary to the congressional intent underlying the authorizing statutes, we must hold that the Claims Court did not err by not deferring to Interior's application of its own regulations.
 
 CONCLUSION
 
 40
 In view of the foregoing, we hold that the Claims Court correctly determined that Congress did not grant Interior the authority under the IOAA or the 1973 amendment to the MLA to obtain reimbursement for application-processing-costs when such costs are incurred prior to the effective date of implementing regulations promulgated pursuant to these statutes. Accordingly, the Claims Court's decision, granting the consortium's motion for summary judgment on this issue, is affirmed.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 31 U.S.C. Sec. 483a (1976)
 
 
 [2]
 30 U.S.C. Sec. 185 (1976)
 
 
 [3]
 43 C.F.R. Sec. 2802.1-2 (1976)
 
 
 [4]
 Alaskan Arctic Gas Pipeline Co. v. United States, 9 Cl.Ct. 723 (1986)
 
 
 [5]
 Alyeska Pipeline Serv. Co. v. United States, 224 Ct.Cl. 240, 624 F.2d 1005 (1980) (Alyeska I )
 
 
 [6]
 31 U.S.C. Sec. 483a (1976)
 
 
 [7]
 30 U.S.C. Sec. 185(l ) (1976)
 
 
 [8]
 43 C.F.R. Sec. 2802.1-2 (1974)
 
 
 [9]
 43 C.F.R. Sec. 2802.1-2 (1976)
 
 
 [10]
 See Brant v. United States, 220 Ct.Cl. 65, 597 F.2d 716, 718 (1979); Carrier Corp. v. United States, 208 Ct.Cl. 678, 534 F.2d 244, 249 (1976)
 
 
 [11]
 See Reid v. Department of Commerce, 793 F.2d 277, 281-82 (Fed.Cir.1986) (citing examples of literal statutory interpretation that lead to incongruous results); Barber v. United States, 230 Ct.Cl. 287, 676 F.2d 651, 655 (1982) (recognizing that a court may turn to legislative history when literal statutory language is unclear)
 
 
 [12]
 See South Corp. v. United States, 690 F.2d 1368, 1370 (Fed.Cir.1982)
 
 
 [13]
 Alyeska I, 624 F.2d 1005
 
 
 [14]
 Alyeska Pipeline Serv. Co. v. United States, 231 Ct.Cl. 540, 688 F.2d 765 (1982) (Alyeska II ), cert. denied, 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983)
 
 
 [15]
 Alyeska I, 624 F.2d at 1010
 
 
 [16]
 Id. at 1011
 
 
 [17]
 Alyeska II, 688 F.2d 765
 
 
 [18]
 Id. at 769
 
 
 [19]
 See, e.g., Commissioner of Internal Revenue v. Goulder, 123 F.2d 686, 688 (6th Cir.1941)
 
 
 [20]
 See South Corp., 690 F.2d at 1370
 
 
 [21]
 Alyeska I, 624 F.2d at 1018
 
 
 [22]
 See, e.g., Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941) (construing Revenue Acts as authorizing taxation pursuant to regulations for period subsequent to enactment of authorizing statute and prior to promulgation of implementing regulations)
 
 
 [23]
 See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, reh'g denied, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984)
 
 
 [24]
 Beneficial Corp. v. United States, 814 F.2d 1570, 1574 (Fed.Cir.1987) (quoting American Lamb Co. v. United States, 785 F.2d 994, 1001 (Fed.Cir.1986))
 
 
 [25]
 United States v. Vogel Fertilizer Co., 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982) (quoting National Muffler Dealers Ass'n v. United States, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979))