The UNITED STATES

v.

PUEBLO OF TAOS.

Appeal No. 14–74.

United States Court of Claims.

May 14, 1975.

A. Donald Mileur, Washington, D. C., with whom was Asst. Atty. Gen. Wallace H. Johnson, for appellant. Roberta A. Swartzendruber, Washington, D. C., attorney of record.

Richard Schifter, Washington, D. C., for appellees. Darwin P. Kingsley, Jr., New York City, attorney of record. Karelsen & Karelsen, S. Bobo Dean, Jay R. Kraemer, Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C., of counsel.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## ON APPEAL FROM THE INDIAN CLAIMS COMMISSION

### PER CURIAM:

We have before us for review, an interlocutory order, opinion, and findings of the Indian Claims Commission, reported 33 Ind.Cl.Comm. 82 and ff. (1974). The United States, in prosecuting its appeal here, concedes it is liable to pay the appellee Pueblo of Taos the sum of $297,684.67 on account of extinguishment of appellee's title to 926 acres constituting or including the town of Taos, New Mexico. It denies it is liable, as the Commission has held, to pay simple interest on that sum, at 5% per annum from March 17, 1927, until paid. Said payment, with or without interest, will be subject to offsets as set forth in the order.

The Commission, citing decisions of this court, states the interest issue to turn on whether the United States in extinguishing the Indians' title, acted as guardian or trustee over Indian property, or as a taker obliged by the Fifth Amendment to pay just compensation. It continues, if a taking is sought to be predicated on disposition of Indian property to third parties, the criterion is whether Congress in disposing of the property has made a good faith effort to realize its full value for the Indians. Three Affiliated Tribes Of The Fort Berthold Reservation v. United States, 390 F.2d 686, 182 Ct.Cl. 543, 557 (1968).

It is unnecessary to trace the history of the Indians' title and the complex operations by which it was extinguished without compensation. This is sufficiently done in the Commission's exhaustive opinion, which we incorporate by reference but need not repeat since only the interest is now in dispute. The Congress may have intended that the Pueblo Lands Board established as its instrument under the Pueblo Lands Act, 43 Stat. 636, should extinguish Indian title only in accord with trusteeship standards. The Board failed to do so because of its unfortunate mistaken assumption that a Spanish grant to another grantee overlapped the grant to the Indians in the townsite area, and because the Indians ceased the prosecution of their claims in the erroneous belief that the Board could and would allow them their Blue Lake Canyon claim as an offset. The Congress repeatedly had the unsatisfactory nature of the Board's work called to its attention and failed to take appropriate action, until in 1970 it enacted Pub.L. 91–550, 91st Cong., 2d Sess. (84 Stat. 1437), awarding 48,000 acres of the Blue Lake area to the Indians, subject to certain conservation restrictions. This will serve as an offset, as the statute requires, but cannot retroactively reconvert the acts of the Pueblo Lands Board to an exercise of trusteeship, and is not intended to.

Appellant United States says that the creation of the Pueblo Lands Board was a good faith effort by Congress to do justice, and therefore the standards for an act of trusteeship, rather than a taking, are satisfied. The above cited "good faith effort" decision, *Three Affiliated Tribes Of The Fort*

*Berthold Reservation,* was not intended to overrule earlier Supreme Court decisions, nor could it have done so, but to synthesize the various rules laid down in them. The Supreme Court has repeatedly held that the deprivation of an Indian tribe of its property in land, by an error of the United States as to the location of a boundary or the devolution of a title, constitutes a Fifth Amendment taking if the property is then turned over to another owner. United States v. Creek Nation, 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331 (1935); Chippewa Indians v. United States, 301 U.S. 358, 375, 57 S.Ct. 826, 81 L.Ed. 1156 (1937). Such takings typically generate awards including interest as part of just compensation, United States v. Creek Nation, *supra*; Shoshone Tribe v. United States, 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937). This has been followed where defendant relied on the good faith of an error in a survey to avoid taking liability. Sioux Tribe of Indians v. United States, 315 F.2d 378, 161 Ct.Cl. 413, cert. denied, 375 U.S. 825, 84 S.Ct. 66, 11 L.Ed.2d 57 (1963). It is to be presumed that whatever effort the United States made in the above cases to decide correctly was not sufficient in the circumstances. It was also insufficient here. The "good faith effort" doctrine appears to have a more significant role with respect to land value issues, which are matters of opinion anyway, than it does with respect to determinations as to land titles and boundaries, which are either right or wrong, absolutely. Appellant no longer contends that the Pueblo Land Board decision was right.

Appellant decided to drop the defense that the claimant Indians were barred by collateral estoppel, the Commission having considered it and ruled adversely on it in the decision under review. Such a defense normally belongs to the party relying on it, who must give notice of his intention to do so. Blonder-Tongue Labs Inc. v. University Foundation, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). This court inquired at oral argument for what reasons the defense was not pressed, and the ensuing colloquy led to an agreement that both parties would submit supplemental briefs, which they have done. Appellant says the defense, if available, would be collateral estoppel, not *res judicata,* and admits in the circumstances appellant can benefit from it now only if we perceive "plain error" in the decision below.

■ The short answer is that even disregarding appellant's position changes from time to time, we do not see "plain error". Our decision in Andrade v. United States, 485 F.2d 660, 202 Ct.Cl. 988 (1973), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974), reflects that the bar of *res judicata* and collateral estoppel is not absolute against Indian tribes, any more than other litigants. It can be lifted by an "independent action" in another tribunal if the original decision alleged as a bar was unconscionable because obtained by fraud on the court, or for various other reasons in the same family. The tribunal to entertain the "independent action" is one that would have jurisdiction apart from the *res judicata* bar. In a case of collateral estoppel, the lack of a full and fair opportunity to litigate would prevent it from applying. *Blonder-Tongue, supra.* The Indian Claims Commission proceeding here under review is the "independent action" before us.

The Pueblo Lands Board knew on the authority of the United States Supreme Court that the Pueblo Indians were under full Government tutelage, true

> * * * Indians in race, customs, and domestic government. Always living in separate isolated communities, adhering to primitive modes of life, largely influenced by superstition and fetichism, and chiefly governed according to the crude customs inherited from their ancestors, they are essentially a simple, uninformed and inferior people. * * * (United States v. Sandoval, 231 U.S. 28, 39, 34 S.Ct. 1, 2, 58 L.Ed. 107 (1913)).

It was this decision, restoring the Pueblo lands to status as "Indian Country", and reinstating the Federal laws that inhibited non-Indians from acquir-

ing Indian land, that was the occasion for creation of the Pueblo Lands Board. The Board, therefore, should not have accepted any waiver, compromise, or abandonment of a claim by Pueblo Indians, without taking the precautions that are appropriate in case of a claimant under guardianship or wardship.

What these precautions are appear in *Andrade, supra.* Indeed, the reported proceedings of the Indian Claims Commission, there reviewed, were a model of what such precautions ought to be. They inquired whether the Indians had been given fair and unbiased advice by their counsel as to the merits of the proposed compromise, whether adequate means were taken to inform them of the proposal, and whether they voted for it in fair elections.

No such precautions were taken by the Pueblo Lands Board. A majority of the Taos Pueblo Council appeared before the Board, unaccompanied by the Counsel who represented them in that tribunal. The Governor of the Pueblo stated the Pueblo intended to waive their claim for the townsite. The Board learned then or soon thereafter that they expected a *guid pro quo* in the Blue Lake Canyon. The Board was urged either to reopen the hearings and determine the rights of the claimants, or else do something to effectuate the exchange. They determined that the latter was beyond their charter, yet did nothing along the former line.

■ In these circumstances, we do not have to hold whether the claim is barred by collateral estoppel or *res judicata.* We only have to determine whether "plain error" appears in the record because the Commission did not bar it on one or the other ground. It does not appear, because the Board determination, on the record made, could have been and probably was tainted by not giving such full and fair opportunity to litigate, as was appropriate for a litigant under Government wardship.

The Commission says the Board decision is *res judicata* on the issue before it, namely, whether the United States could have recovered the Town of Taos by seasonable prosecution within the meaning of Section 6 of the Pueblo Lands Act. It is not *res judicata,* says the Commission, as to whether the United States took the Town without just compensation under the Fifth Amendment. The appellant now says there is only a semantic difference between these issues, the answer to the one leading inevitably to the answer to the other. One reason why the Board thought the United States could not have recovered the townsite for the Indians is that it thought—erroneously as we now know—that the Indians had no valid claim to it. The basis of the Commission's holding of course is that they did have a good claim. To the extent the Board's decision was based on the idea that the Indians had waived their claim, we find this ground of avoiding *res judicata* meshes in with the one we suggest above and adds little to it. We meet ourselves coming back.

The Commission's views of the claim are not the only ones possible for a reasonable mind to take, but appellant has failed to show the case is within any of the categories of error that would warrant reversal under the statute, 25 U.S.C. § 70s.

■■ In their cross-appeal, the Indians would have the interest start running in 1924, not 1927. We think the Commission's selection of the later date is within its powers. The Commission also refused interest on delay in payment of sums awarded by the Pueblo Lands Board for lands outside the townsite. We see no error in this.

Accordingly the order of the Indian Claims Commission, appealed here, is affirmed, and the case is remanded to the Commission for further proceedings to complete its disposition of the case.

Affirmed.