**ALYESKA PIPELINE SERVICE COMPANY, et al.**

v.

**The UNITED STATES.**

No. 384–78.

United States Court of Claims.

Sept. 8, 1982.

See also 624 F.2d 1005.

Quinn O'Connell, Washington, D. C., attorney of record, for plaintiffs; Ernest C. Baynard III, Maryann Armbrust, and Connole & O'Connell, Washington, D. C., of counsel.

Janice Siegel, with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D. C., for defendant; Steven A. Herman, Washington, D. C., attorney of record; Marcia Lipson, Dept. of the Interior, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and DAVIS, Judge.

ON CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

This case is a sequel to *Alyeska Pipeline Service Co. v. United States*, 224 Ct.Cl. 240,

624 F.2d 1005 (1980) ("*Alyeska I*"). There we held that the plaintiffs were entitled to recover fees paid to reimburse the government for its expenses in processing the plaintiffs' application for a permit to construct the trans-Alaska oil pipeline. The primary ground of our decision was that the governing legislation authorized the Secretary of the Interior to obtain such reimbursement only if he acted pursuant to an authorizing regulation, and that since he had not promulgated such a regulation until June 1975, he lacked authority to obtain reimbursement for the period there involved, i.e., through September 30, 1973.

In the present case, the plaintiffs seek recovery of similar fees they paid to the Secretary for the period from October 1, 1973, to June 1975. They argue that since the Secretary had assessed those charges before he promulgated the regulations, under *Alyeska I* those charges also were invalid.

The parties have filed cross-motions for summary judgment on this claim, and we heard oral argument. We hold that the plaintiffs impermissibly split their cause of action between *Alyeska I* and the present case, and that they are barred from asserting the present claim.

## I.

A. Because of our disposition of this case, we need only summarize its facts. In *Alyeska I*, we described the background in detail.

1. In 1969, the plaintiffs applied to the government for a right of way to build a pipeline to transport crude oil across Alaska. The plaintiffs and the government, however, encountered strong opposition to the pipeline. Litigation and the resulting court decisions threatened to delay its construction indefinitely.

To overcome the delay, Congress enacted Pub.L.No.93–153, titles I & II, 87 Stat. 576 (1973), *codified in* 30 U.S.C. § 185 (1976) & 43 U.S.C. §§ 1651–55 (1976) (hereinafter referred to generally as the "TAPS Act"). The legislation removed the legal barriers to the construction of the pipeline by amending the law pertaining to pipeline rights of way in general, by eliminating further environmental impact studies of the trans-Alaska pipeline, and by limiting judicial review of the actions taken by the Secretary of the Interior (the "Secretary") in connection with the right of way for that pipeline.

In January 1974, the plaintiffs and the Secretary entered into an agreement granting the right of way ("Right-of-Way").

2. The TAPS Act requires that applicants for rights of way reimburse the government for its cost of processing the application. It also requires the holders of rights of way to reimburse the government for its costs of monitoring the "pipeline and related facility" and to pay annually to the government the fair rental value of the right of way. Until June 1, 1975, however, the Secretary had not promulgated regulations authorizing imposition of those costs and fees.

Under the Right-of-Way, the government billed the plaintiffs $38,930,438 in costs and fees through the "transition" quarter following fiscal year 1976. Of the total, more than $12 million, which the plaintiffs paid, represented costs incurred prior to the passage of the TAPS Act. The plaintiffs also paid another $13,691,980 for costs and fees accruing after the passage of the TAPS Act but before the promulgation of authorizing regulations in June 1975. The remainder of the costs and fees the plaintiffs paid are not germane to the present motions.

B. 1. In August 1978, the plaintiffs filed a petition in this court seeking a refund of certain of the costs and fees paid under the Right-of-Way. In February 1979, the plaintiffs amended their petition.

The amended petition contained three "claims." The first claim sought a refund of the entire $12,253,730 payment made to the government for costs incurred prior to the passage of the TAPS Act because no regulations authorized collection of that sum. The second claim (an alternative to the first) challenged the government's entitlement to particular items of that $12,-

253,730. The third claim challenged specific charges levied after passage of the TAPS Act. The third claim, however, did not challenge the government's authority to charge the plaintiffs for costs and fees after passage of the TAPS Act at a time when there were no authorizing regulations.

2. The plaintiffs moved for partial summary judgment on the first claim (or alternatively on the second claim) of the amended petition. The government moved to dismiss the petition on the ground that this court had no jurisdiction; alternatively, the government cross-moved for summary judgment on the first claim. In *Alyeska I*, decided in June 1980, we granted the plaintiffs' motion for summary judgment on their first claim and denied the other motions. (The plaintiffs' second claim was rendered moot by that decision.)

We held that the government was not authorized to collect the $12,253,730 from the plaintiffs because no regulation authorized that action. We relied on the Independent Offices Appropriation Act, 31 U.S.C. § 483a (1976), which only allows the government to "impose a fair and equitable 'fee, charge or price' [for any "license, permit . . . or similar thing of value or utility"] . . . *if* [it] ha[s] 'authorized [such assessment] by regulation.'" 224 Ct.Cl. at 248, 624 F.2d at 1010. We rejected on alternative grounds the government's argument that the TAPS Act, not the Independent Offices Appropriation Act, determined the Secretary's authority to charge costs and fees to the plaintiffs.

First, we held that in the TAPS Act, Congress did not override the requirement in the Independent Offices Appropriation Act that the charges be assessed pursuant to regulation. 224 Ct.Cl. at 250–54, 624 F.2d at 1011–13. Second, we held that even if the TAPS Act had that effect, it could not be applied retroactively. *Id.* at 254–59, 624 F.2d at 1013–16. We noted that the TAPS Act

> has a significant prospective effect upon the plaintiffs: it makes them liable for the additional costs the United States incurred in connection with the construc-

tion and operation of the pipeline after November 1973. Indeed, plaintiffs do not dispute their obligation to reimburse the government for the latter costs.

*Id.* at 255, 624 F.2d at 1014.

We denied the government's motion for rehearing *en banc.* In October 1980, after the parties had stipulated to the amount of damages, this court entered partial judgment for the plaintiffs on the first claim.

3. After the partial judgment in *Alyeska I* was entered, the plaintiffs moved to amend their petition again in March 1981. The second amended petition added new third and fourth claims and designated the third claim as the fifth claim. The new third claim (the subject of the present motions) seeks recovery of the $13,691,980 costs and fees the government collected between the passage of the TAPS Act in November 1973 and the promulgation in June 1975 of regulations authorizing the collection of costs and fees, on the ground that the Secretary had no authority to do so except pursuant to regulation.

The defendant stated in writing that it did not oppose the amendment, and the trial judge permitted the amendment. *See* Rule 39(a).

4. The plaintiffs have moved for summary judgment on their new third claim, arguing that the rationale of *Alyeska I* indicates that even after the passage of the TAPS Act, it was unlawful for the government to charge to the plaintiffs costs and fees connected with the Right-of-Way in the absence of authorizing regulations. The government has cross-moved for summary judgment on this claim, basically rearguing *Alyeska I* and also attempting to distinguish the case. The government also urges that we should dismiss the third claim on the ground that the plaintiffs failed to exhaust their administrative remedies.

At oral argument the court raised the question whether the plaintiffs had split their cause of action between *Alyeska I* and the present action. The parties submitted supplemental briefs on that question.

## II.

We hold that the plaintiffs impermissibly split their cause of action, so that they are barred from now asserting the third claim of their second amended petition.

A. In general, a final judgment on the merits of a claim (i.e., cause of action) precludes the same plaintiff from bringing against the same defendant a subsequent action on the same claim, or any part of the claim that was, or reasonably could have been, brought in the initial action. *Container Transportation International, Inc. v. United States*, 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972) (and cases cited there); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §§ 18, 19 (1980) [hereinafter cited as RESTATEMENT]. Simply, a plaintiff may not split his claim or cause of action between different suits. *Everett Plywood Corp. v. United States*, 206 Ct.Cl. 244, 252, 512 F.2d 1082, 1087 (1975).

The plaintiffs' claim to a refund of all charges made under the Right-of-Way and incurred before the passage of the TAPS Act (the subject of *Alyeska I*) and their claim to a refund of all charges made under the Right-of-Way and incurred after passage of the TAPS Act but before promulgation of the authorizing regulations are parts of a single indivisible claim. They cannot be split.

1. A plaintiff's claim consists of all rights against a particular defendant "with respect to all or any part of the transaction, or a series of connected transactions, out of which the action arose." *Container Transport International*, 199 Ct.Cl. at 718, 468 F.2d at 929; *see also Everett Plywood Corp.*, 206 Ct.Cl. at 251–53, 512 F.2d at 1086–87; RESTATEMENT, *supra*, at § 24(1); 18 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4407 (1981) [hereinafter cited as WRIGHT & MILLER].

What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectation or business understanding or usage.

RESTATEMENT, *supra*, at § 24(2); *see also Container Transport International*, 199 Ct.Cl. at 718, 468 F.2d at 929.

Both the claim resolved in *Alyeska I* and the third claim presently before us arose out of the same transaction—the government's assessment of the costs it incurred in connection with the Right-of-Way. Both claims rest upon the same legal theory—that the government's assessment of the costs was improper because made when there were no authorizing regulations. Since claim splitting cannot be justified on the ground that the two actions are based on different legal theories (*see e.g.*, 18 WRIGHT & MILLER, *supra*, at § 4411), *a fortiori*, it is improper where the actions involve the same legal theory.

It is consistent with the expectations of the parties to treat as a single claim all of the plaintiffs' claims based upon the government's assessment of costs without authorizing regulations made prior to the filing of the amended petition in 1979. In moving to amend their petition in 1981, the plaintiffs themselves recognized that "the claim set forth in the Second Amended Petition arose out of the 'conduct, transaction or occurrences' set forth in the original pleading" (quoting Rule 39(c)).

As this court has noted on several occasions, a single nondivisible contract—as the Right-of-Way contract was—normally gives rise to only one claim. *E.g., Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 254, 368 F.2d 847, 861 (1966). In certain circumstances, a part of a claim arising out of a nondivisible contract that is severable from the rest of the claim and that could not be asserted in the earlier suit may be the basis of a second suit. *Everett Plywood Corp.*, 206 Ct.Cl. at 251, 512 F.2d at 1087. However, "if the claimant, before filing its first suit, is in possession of all the facts on which its second suit is based, the splitting of the claims into multiple suits is fatal to maintenance of the later-filed action." *Id.*

at 252, 512 F.2d at 1087; *see also* 18 WRIGHT & MILLER, *supra*, at § 4409.

When the plaintiffs first amended their petition in 1979 to include the claim addressed in *Alyeska I*, they were in possession of all the facts upon which the third claim of the second amended petition is based. The plaintiffs have offered no justification for their failure to raise the present claim before our decision in *Alyeska I*.

2. The plaintiffs argue, however, that the claim in *Alyeska I* and that presented here accrued at different times and so are different claims. They rely primarily on *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In *Sunnen*, the Supreme Court held that in the "federal income tax field" "[e]ach year is the origin of a new liability and of a separate cause of action." 333 U.S. at 598, 68 S.Ct. at 719. Accordingly, a final judgment on the merits normally acts as a complete bar only as to subsequent actions on the same claim and the same tax year. *Id.* If the subsequent action involves a similar claim but a different tax year, the judgment bars only "those matters in the second proceeding which were actually presented and determined in the first suit." *Id.*

The decision in *Sunnen* was based largely on concerns that are peculiar to the "income tax field" and irrelevant here. As the Court pointed out, "[i]ncome taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action." *Id.* The Court also noted (*id.* at 599, 68 S.Ct. at 720):

> A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class.

These same concerns are not present here. Each year for which the government assessed its expenses in connection with the pipeline did not involve a new liability, and there was no change in the significant facts or the controlling legal principles between pre- and post-November 1973. We hold only that *Alyeska I* bars the plaintiffs' new third claim which they could have asserted when they filed their first amended petition. The plaintiffs are not barred from bringing other claims, arising out of the Right-of-Way, that could not have been asserted in the first amended petition. *See Everett Plywood Corp.*, 206 Ct.Cl. at 251, 512 F.2d at 1087.

B. The plaintiffs argue, however, that since they did not file a new suit after *Alyeska I* to challenge the post-TAPS Act charges made without authorizing regulations, but merely amended their petition to add this claim, they did not split their claim at all. The plaintiffs further argue that the doctrine of claim preclusion "can usually only be urged in another action or proceeding" (quoting 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.405[1] p. 627 (1982)). The plaintiffs note that in *Alyeska I* the court entered only a partial summary judgment, and that 28 U.S.C. § 2517(b) (Supp. IV 1980) states that a partial judgment entered against the government discharges "only the matters described therein." Consequently, they conclude *Alyeska I* did not extinguish the claim they now seek to assert.

While the doctrine of claim preclusion "usually" does not bar other aspects of the same action that are not reached in the partial final judgment, there are exceptions. *See, e.g., Luff v. Luff*, 267 F.2d 643, 646 (D.C.Cir.1959) (partial summary judgment of the district court, affirmed by the appellate court, barred the parties from raising a new related issue at the subsequent trial). This case is such an exception.

While a partial summary judgment "usually" does not bar other aspects of the action which are not the subject of the judgment, the court "usually" is aware, when it

grants the partial judgment, of the other aspects of the plaintiff's action that the judgment does not resolve. *Cf. Luff,* 267 F.2d at 646. In *Alyeska I,* the court acted in the belief that the plaintiff was not challenging the government's right to impose Right-of-Way costs on the plaintiffs after the passage of the TAPS Act. The court believed that the partial judgment in *Alyeska I* would discharge all the plaintiffs' existing claims that involved a challenge to the Secretary's authority to impose charges in the absence of regulations.

We pointed out there that the "plaintiffs do not dispute their obligation to reimburse the government" for "the additional costs the United States incurred in connection with the construction and operation of the pipeline after November 1973" (*supra,* p. 768). The plaintiffs could have sought modification of the opinion to eliminate or change that statement. They did not do so. Instead they waited nine months, until after the judgment in *Alyeska I* had been entered, and then asserted the additional claim they could have asserted and litigated as part of the claims adjudicated by the earlier decision. The claim comes too late.

C. Finally, the plaintiffs argue that even if they split their claim, they should not be barred from asserting the second portion of it because the government acquiesced in the splitting. They point out that the government did not object to their proposed amendment of the petition to add the third claim and raised no question about splitting the claim in its briefs. After the court raised the issue at oral argument, however, the government in its supplemental filing argued that the plaintiffs improperly had split their claim.

Furthermore, while a "main purpose" of the rule against claim splitting is "to protect the defendant from being harassed by repetitive actions based on the same claim" (RESTATEMENT, *supra,* at § 26 comment a), the rule also is designed to promote "judicial economy" and "convenience." *See Nager Electric Co.,* 177 Ct.Cl. at 254, 368 F.2d at 861. Although normally "the needs of judicial administration are, at best, of subsidiary value" (*Technograph Printed Circuits, Ltd. v. United States,* 178 Ct.Cl. 543, 555, 372 F.2d 969, 977 (1967)), when necessary, the court may raise the question of claim or issue preclusion *sua sponte. See, e.g., United States v. Pueblo of Taos,* 207 Ct.Cl. 53, 57–58, 515 F.2d 1404, 1406 (1975).

In this case, we raised the issue ourselves because of the adverse effect the plaintiffs' failure to include this claim in the first amended petition had upon the proper functioning of the judicial process. If the plaintiffs had not split their claim, both the pre- and post-TAPS Act aspects of it could have been resolved in the original *Alyeska I* proceeding. The effect of the plaintiffs' splitting of their claim has been to require the parties and the court to expend additional time and effort to consider unnecessarily an issue that could and should have been resolved in the earlier proceeding. One of the purposes of the rule against claim splitting is to prevent that situation.

## CONCLUSION

The plaintiffs' motion for summary judgment is denied. The defendant's cross-motion for summary judgment is granted and the third claim of the plaintiffs' second amended petition is dismissed. The case is remanded to the Trial Division for further proceedings on the fourth and fifth claims of the petition.