Charles D. YOUNG & Angela R. Young, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 02–1368C.

United States Court of Federal Claims.

April 19, 2004.

Charles D. Young, Pine Bluff, AR, Angela R. Young, Little Rock, AR, pro se.

Nancy M. Kim, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director, all of Washington, D.C., for defendant.

## OPINION AND ORDER

WOLSKI, Judge.

Defendant has moved to dismiss this case, under Title 28, Section 1500–the provision that shuts the door to this Court's jurisdiction when a sufficiently similar suit against the United States government is pending in another court at the time litigants bring their case to our doorstep. The application of this statute is usually pretty straightforward-the Court looks to see what was pending elsewhere and compares that matter to the controversy brought before it. But this usual "what did they file, and when did they file it?" exercise is complicated in this case due to the *pro se* status of the plaintiffs.

The complications are two-fold. First, we have the fairly typical situation in which the papers filed-both here and in the other courts where matters were litigated-lack the clarity and fullness that one would hope to find were the plaintiffs represented by counsel. But more important to the outcome of this motion, this case is marked by procedural irregularities due in no small measure to plaintiffs' lack of counsel. After plaintiffs properly filed a complaint in this Court at a time that the Section 1500 door was still open, they somehow became confused as to whether exhaustion of administrative remedies was first required. Having had tort claims concerning the same matter dismissed by a district court for this reason, plaintiffs out of an over-abundance of caution asked to have the complaint dismissed without prejudice. The government did not oppose the request and the Court granted it, without either realizing that plaintiffs had, after bringing their case in our Court, since filed an appeal against the government in the district court case. But before this Court dismissed the Youngs' first complaint, the Youngs had already filed their second one with this Court. Under these circumstances, as more fully explained below, the Court concludes that jurisdiction had already been properly secured and thus the motion to dismiss should be denied.

## BACKGROUND

Plaintiffs, Charles D. and Angela R. Young (the "Youngs"), first filed a complaint in this Court on July 8, 2002. This complaint was assigned case number 02–773C ("*Young I*"). In *Young I*, the Youngs alleged that an "actual loan contract" into which they had entered with the United States Department of Housing and Urban Development ("HUD"), and "an implied contract with HUD employees" were breached by HUD.[1] The only specific allegations concerning the alleged breach were that HUD sold the loan to a third party, Ocwen Federal Bank, thereby "fail[ing] to uphold the provisions of the original loan contract" and also "fail[ing] to provide that Ocwen Federal must abide by the original contract."[2] Plaintiffs included an assertion that "claims may be filed under the Federal Tort Claims Act," and explained that they were in the process of exhausting administrative remedies.

Before the United States filed a response to the complaint, the Youngs moved on September 26, 2002, to dismiss *Young I* without prejudice. Apparently, the Youngs had received a letter from HUD on September 14, 2002, which led them to believe that administrative remedies "were not finished" until August 20, 2002.[3] In their motion, the Youngs cited *Asco–Falcon II Shipping Co. v. United States*, 18 Cl.Ct. 484 (1989), a case that concerned the need to exhaust administrative remedies when a claim arises under a contract that has a "changes" or "disputes" clause covering the claim. *See id.* at 491. But there are no such clauses identified in the express contracts that the Youngs allege were breached, nor could there be one in an implied contract.[4] The Youngs, litigating this matter *pro se*, were just confused about the procedures they had to follow-although they were savvy enough to recognize that a new complaint containing a more definite statement was warranted, as they so stated

in their motion. There were no administrative remedies to exhaust before this Court would have jurisdiction over the contract claims in *Young I*-a point the United States even seemed to concede, as in its statement of non-opposition it suggested as an alternative to dismissal a stay pending exhaustion. Nevertheless, at the time there appeared to be no potential prejudice in granting the dismissal without prejudice, and the Court granted the motion on October 23, 2002.

The Youngs jumped the gun, however, and filed their new complaint as a new case in this Court on October 8, 2002-more than two weeks before the first case was dismissed. This is the present case before the Court, assigned case number 02–1368C ("*Young II*"). The claims raised in *Young II*, albeit more specific, were the same claims raised in *Young I*, which at the time was still pending before the Court. In *Young II*, the Youngs allege that HUD tortiously breached several express and implied contracts. These contracts included a note secured by a mortgage, used to finance the rehabilitation of their residence, and the associated construction contract; a contract under which HUD was paid a fee "to insure [sic] that the home was built to acceptable, safe, code standards"; and a forbearance agreement. The Youngs maintain that HUD's failure to properly inspect construction resulted in $18,000 in damages due to defects in two separate bathrooms, and over $12,000 in damages due to repairs to "a sub-floor base and part of the foundation." They also contend that HUD failed to abide by the terms of their agreements by failing · to assist plaintiffs with a new payment plan, by allowing foreclosure on the property, and, finally, by refusing to investigate plaintiffs' claims properly. The Youngs also alleged that HUD's failure to keep proper records and to properly investigate their complaints-including claims of

---

1. The complaints are typed in all uppercase letters, and in quoting from them the Court has adjusted the case for ease of reading.

2. The Youngs also alleged that HUD had "provided the funds for" and "directly serviced" their loan, but "stopped accepting payments" from them "due to" the Balanced Budget Downpayment Act of 1996.

3. The Youngs did not submit a copy of this letter.

4. Nor can it plausibly be contended that this case comes under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.;* thus, the exhaustion requirements of that provision are not relevant.

fraud-constituted violations of the Fair Housing Act.

Some light was shed on these allegations in February, 2003, when the government filed its initial motion to dismiss, which informed the Court of litigation brought by the Youngs in the United States District Court for the Eastern District of Arkansas. That case, *Young v. U.S. Department of Housing & Urban Development* (No. 4:00cv00079GH), was brought against HUD, Ocwen Federal Bank ("Ocwen"), the lawyers who represented Ocwen in foreclosure proceedings, and another individual. From an order dismissing the claims against HUD, filed in the district court case on July 2, 2001, we learned a bit more about the matters at hand. The Youngs had taken out a mortgage loan from the Simmons First National Bank ("Simmons"), secured by their residence, to rehabilitate and repair their house. This loan was insured by HUD under the Section 203–K mortgage insurance program.[5] After the Youngs defaulted on this mortgage in 1994, they applied for coverage under HUD's Single–Family Mortgage Assignment Program ("Assignment Program").[6] But because their initial application for the Assignment Program did not contain all the required documentation, it was rejected. In the meantime, Simmons began foreclosure proceedings and the Youngs responded with two administrative complaints filed with HUD in 1995–the first against Simmons and the second against the HUD Arkansas office.

Among other things, these administrative complaints alleged discrimination on the basis of disability, failure to inform the Youngs of the Section 203–K policies, Simmons' interference (via foreclosure proceedings) with the Youngs' ability to get the HUD assignment, and HUD's improper rejection of their application for the Assignment Program. HUD investigated both complaints and determined that there was no reasonable cause to believe the Fair Housing Act was violated. As a result of these complaints, however, the Youngs did have their application for the Assignment Program reprocessed and accepted, and HUD told Simmons to suspend foreclosure proceedings.

The Youngs also phoned in a complaint to the HUD Hotline in March, 1996. The Youngs were upset that Simmons had charged them interest during the assignment process and legal fees after they were accepted for assignment, and they alleged that Simmons misled HUD in order to secure permission to foreclose on their property. The Youngs also complained that improper construction had resulted in $18,000 in repairs. HUD determined that Simmons had complied with the applicable regulations, and that the Youngs' house had passed inspection.

After HUD had acquired the Youngs' mortgage and security from Simmons, it subsequently assigned the loan to Ocwen. The Youngs apparently defaulted on the loan, Ocwen initiated foreclosure proceedings, and the Youngs responded by filing the district court case on February 2, 2000. The Youngs alleged that HUD discriminated against them in violation of the Fair Housing Act ("FHA"), was negligent with regard to the inspection of the construction and the investigation of their complaints, and breached a "loan contract." The Youngs also alleged that the private party defendants committed various torts involving credit reporting and debt collection proceedings. In the aforementioned July 2, 2001 order, the district court dismissed HUD as a defendant in that case. The district court dismissed the FHA and tort claims brought against HUD, finding that there was no private right of action under the FHA and that the Youngs had failed to exhaust administrative remedies governing the tort claims. The district court also noted that the government argued that the contract claims should be dismissed as belonging in our jurisdiction and not the district court's, but determined this argument was "moot" based on the Youngs' clarification that they were not seeking damages from HUD for breach of contract.

The Youngs sought appellate review of this decision. Their appeal was dismissed for

---

**5.** *See* 12 U.S.C. § 203(k).

**6.** This program was established under 12 U.S.C. § 1715u.

lack of jurisdiction by the United States Court of Appeals for the Eighth Circuit on September 4, 2001, as the district court's order was not final and appealable because of the claims remaining against the private defendants. On April 29, 2002, the Youngs moved for an order "to reinstate" HUD as a defendant, which the district court treated as a motion for reconsideration and denied on May 30, 2002. The district court at that time also denied the Youngs' request that the July 2, 2001 order be deemed final and appealable. Rebuffed in their efforts to prosecute claims against HUD in the district court, the Youngs then filed *Young I* in this court. The next month-on August 5, 2002–the district court dismissed the Youngs' case with prejudice. The Youngs filed a notice of appeal on August 12, 2002. After this notice had been filed, as described above, the Youngs moved to dismiss *Young I* and filed the complaint in *Young II*.

The government moved to dismiss *Young II* on February 7, 2003, arguing that this Court lacks jurisdiction over tort claims, that the Youngs are barred from litigating their claims under the doctrine of *res judicata*, and that the Youngs failed to state a claim for money damages based on breach of contract.[7] This Court granted the motion in part on June 26, 2003, dismissing the Youngs' claims brought under the FHA but not the breach of contract claims. The Court ruled that the Youngs had adequately stated claims that the government breached contractual obligations to prevent foreclosure on the Youngs' home and to ensure that the construction done on that house was done in a satisfactory manner.

The case was reassigned to the undersigned on August 15, 2003, pursuant to Rule 40.1(a) of the Rules of the United States Court of Federal Claims ("RCFC"). While preparing the Joint Preliminary Status Report, counsel for the government was reminded of the Youngs' appeal of the district court case, as the Youngs mentioned it in their draft of the report. The government then filed the current motion to dismiss on

September 29, 2003. Less than one month later, the Eighth Circuit affirmed the district court's dismissal of the Youngs' lawsuit. *Young v. U.S. Dept. of Hous. & Urban Dev.,* 78 Fed.Appx. 553 (8th Cir.2003).

## DISCUSSION

Section 1500 of Title 28, U.S.Code ("Section 1500"), provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Although the Court of Appeals for the Federal Circuit had temporarily detoured from this path, see *UNR Industries, Inc. v. United States,* 962 F.2d 1013, 1020–21 (Fed.Cir. 1992), it is currently the law of the Circuit that Section 1500 is applied with regard only to the state of affairs existing at the time the complaint was filed in our Court, see *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1549 & n. 10 (Fed.Cir.1994) (citing *Keene Corp. v. United States,* 508 U.S. 200, 209 n. 4, 216, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)); *Tecon Eng'rs, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943, 946, 949 (1965). Claims pending elsewhere will prevent our Court from obtaining jurisdiction at the outset-this constitutes a permanent defect that is not cured if these claims cease to be pending prior to the time a motion under Section 1500 is entertained by this Court. *See Keene Corp.,* 508 U.S. at 207–09, 113 S.Ct. 2035. On the other hand, this Court is not divested of jurisdiction when a claim that was first filed here is subsequently raised in another court. *Tecon,* 343 F.2d at 949; *Hardwick Bros. Co. II v. United States,* 72 F.3d 883, 884, 886 (Fed.Cir.1995).

▪ The first question to be answered is whether the claims in *Young II* had been

---

7. The government did not move at that time to dismiss for lack of jurisdiction under 28 U.S.C. § 1500, although its attorneys knew of the appeal

to the Eight Circuit when they received the litigation report from HUD in late December, 2002.

raised by the Youngs against the government in the district court case. Clearly, they were. Both cases include claims for money damages against the government because HUD failed to live up to its obligations under alleged contracts with the Youngs. Both cases involved claims relating to HUD's failure to inspect and investigate the faulty construction work on the Youngs' home, and claims relating to the assignment of the Youngs' loan to Ocwen and Ocwen's resulting collection activity. In opposing the motion to dismiss, the Youngs argue that the claims are different in the two cases, as the district court had no jurisdiction over the contract claims and thus those claims could never have been pending there. But it is the facts alleged and the relief sought, not the legal theory supporting recovery, that defines the claims for purposes of Section 1500.[8] *See Keene Corp.,* 508 U.S. at 212, 113 S.Ct. 2035 ("the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested"); *Loveladies,* 27 F.3d at 1551 ("the claim pending in another court must arise from *the same operative facts,* and must seek *the same relief*") (emphasis in original). Since money damages were sought in the district court case, based on the same operative facts that have been pled in this Court, the claims in both fora are the same for the purpose of applying Section 1500.

The next question is not so easily answered. The Court must determine if the claims against the government raised in the district court case were pending at the time the claims were filed in this Court. As described in detail above, the chronology of relevant events is as follows:

*February 2, 2000*—Complaint filed in E.D. Ark.

*July 2, 2001*—HUD dismissed as party from case in E.D. Ark.

*September 4, 2001*—Eighth Circuit dismisses interlocutory appeal of E.D. Ark. dismissal order.

*April 29, 2002*—Youngs move to reinstate HUD as a party in E.D. Ark. case.

*May 30, 2002*—E.D. Ark. denies Youngs' motion to reinstate HUD.

*July 8, 2002*—Youngs file *Young I* in this Court.

*August 5, 2002*—E.D. Ark. dismisses case with prejudice.

*August 12, 2002*—Youngs file notice of appeal of E.D. Ark. case.

*September 26, 2002*—Youngs move to dismiss *Young I* without prejudice.

*October 8, 2002*—Youngs file *Young II* in this Court.

*October 23, 2002*—This Court dismisses *Young I* without prejudice.

*September 29, 2003*—Government moves to dismiss *Young II* under Section 1500.

*October 20, 2003*—Eighth Circuit affirms dismissal of E.D. Ark. case.

Reviewing this timeline, the procedural irregularity which jumps out is that *Young I* was still alive in this Court at the time that *Young II* was filed. When the Youngs filed their second complaint, along with a Notice of Directly–Related Case under RCFC 40.2 ("Rule 40.2"), the second complaint should have been either treated as an amendment of the complaint in *Young I* or consolidated with *Young I.* Rule 40.2 expressly anticipates the filing of multiple cases that "involve the same parties and are based on the same or similar claims," but this reflects the possibility of facts coming known that could not have been known at the time of filing a lawsuit, see *Everett Plywood Corp. v. United States,* 206 Ct.Cl. 244, 512 F.2d 1082, 1087 (1975), and should not be viewed as an invitation to file the same claim several times in our Court. Parties may not split the same claim

---

8. The old Court of Claims, predecessor to the Federal Circuit, once held that claims dismissed by another court as beyond its jurisdiction are not "pending" for purposes of Section 1500. *Brown v. United States,* 175 Ct.Cl. 343, 348–49, 358 F.2d 1002 (1966). This holding, based on

the premise that previously-filed claims that are pending at the time a claim is filed in our Court do not affect jurisdiction if they are subsequently disposed of, has been explicitly reversed by the Supreme Court. See *Keene Corp.,* 508 U.S. at 217 n. 12, 113 S.Ct. 2035.

into more than one lawsuit before the same court. *Id.; Alyeska Pipeline Serv. Co. v. United States,* 231 Ct.Cl. 540, 688 F.2d 765, 769 (1982) ("[s]imply, a plaintiff may not split his claim or cause of action between different suits") (*citing Everett Plywood* at 1087). The claims raised in *Young II,* although in abbreviated form, were already before this Court in *Young I.*

■ Putting to one side whether this procedural irregularity may be corrected at this time, the vitality of *Young I* raises another question regarding Section 1500: Did this Court have jurisdiction over the claims in *Young I* when that complaint was filed, considering that all of the claims against HUD had been dismissed from the district court case and had not yet been properly appealed? Following the express text of Section 1500 would yield the answer "yes." Once the claims against HUD were dismissed by the district court, there literally would not have been "pending in any other court any suit or process against the United States" brought by the Youngs "for or in respect to" these claims.[9] The situation might have been different had *Young I* been filed while the Youngs were unsuccessfully attempting an interlocutory appeal of the dismissal of HUD from the district court case, or while their "motion to reinstate" HUD was still pending. But at the time *Young I* was filed, there was no pending suit or process-not even one being improperly prosecuted by *pro se* litigants unlearned in the law-containing the Youngs' claims against the government.

The precedents of this Court and the Federal Circuit suggest that this literal approach is correct, and that this Court can exercise jurisdiction over claims that have been dismissed by another court and not yet appealed. The most analogous Federal Circuit decision is *Boston Five Cents Savings Bank,*

*FSB v. United States,* 864 F.2d 137, 139 (Fed.Cir.1988) ("*Boston Bank*"). In *Boston Bank,* the plaintiff's original complaint filed in a district court sought only a declaratory judgment. *Id.* at 138. After losing on summary judgment but winning a remand on appeal, the bank moved to amend its complaint to add a money damages claim. This motion was denied because of inexcusable delay, it having been brought some five years after the initial complaint was filed. *Id.* Seven months later, the bank filed a lawsuit seeking money damages in this Court-which then dismissed it on the basis of Section 1500. The Federal Circuit reversed, rejecting the government's argument that "until the damage claim raised in the district court is resolved on appeal, that claim is pending," 864 F.2d at 139. The Federal Circuit determined that the claim was not pending in another court, as it was not in the original complaint and the motion to amend was rejected. *Id.* Although the denial of the motion to add the money damage claim could have been subsequently appealed once a judgment was entered in the district court (the trial had at that time not yet started), this prospective event did not make that claim "pending" for purposes of Section 1500.

Several decisions of this Court indicate that, if a claim filed here had already been dismissed or rejected by another court, it is the actual filing of a notice of appeal of that other court's decision that would make the claim "pending," and not the mere fact that the time to appeal it has yet to run, see *Wilson v. United States,* 32 Fed.Cl. 794, 795 (1995); *Hulsey v. United States,* 28 Fed.Cl. 75, 76–77 (1993); *Glick v. United States,* 25 Cl.Ct. 435, 438–39 (1992). Although some of these cases were decided under approaches to Section 1500 that have since been repudiated,[10] in each case the appeal was specifical-

---

9. The meaning of the word "pending," when used as an adjective in the legal context, is plain and well-understood. *See, e.g.,* Webster's Third New International Dictionary 1669 (1976) (providing as first definition, "not yet decided: in continuance: in suspense"); Black's Law Dictionary 1154 (7th ed.1999) (defining pending as "[r]emaining undecided; awaiting decision"). "Pending" has had this common meaning at the time, and long before, it was used in the predecessor to Section 1500-in section 8 of the Act of June 25, 1868, 15 Stat. 75, 77. *See, e.g.,* William

A. Wheeler, A Dictionary of the English Language 528 (1868) (defining pending as "[r]emaining undecided; in suspense"); *The Ouachita Cotton,* 6 Wall. 521, 73 U.S. 521, 527, 18 L.Ed. 935 (1867) (using "still pending" and "awaiting adjudication" interchangeably); 11 Oxford English Dictionary 468 (2d ed.1989) (citing a 1797 usage of the term in a reference to legal proceedings).

10. *Hulsey* was under the rule that subsequently-pending claims divest this Court of jurisdiction, contra *Hardwick,* 72 F.3d at 884, 886; *Glick* was

ly identified as the relevant event, not the filing of the complaint in the district court. *See Wilson*, 32 Fed.Cl. at 795 ("plaintiffs had an appeal pending against the United States when they filed suit"); *Hulsey*, 28 Fed.Cl. at 77 ("this court lost jurisdiction ... when plaintiffs filed their notice of appeal"); *Glick*, 25 Cl.Ct. at 438 ("[a] notice of appeal to the circuit court is a 'suit or process' within the meaning of Section 1500") (citation omitted). As jurisdiction under Section 1500 was the very issue being decided, these opinions are not in the category of "drive-by jurisdictional rulings" discounted by the Supreme Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). And indeed, under their respective era's interpretation of Section 1500, in each case the Court would have lacked jurisdiction if a pending appeal related back to the original filing date of the district court complaint, yet this was not the ground for any of the decisions. Each appeal was viewed as a "suit or process" itself, not a continuation of one. Thus, between the time of dismissal or judgment and the filing of a notice of appeal, there was no legal action pending for Section 1500 purposes.

To be sure, there is also authority that can be read to suggest the contrary. In *Maguire v. United States*, 114 Ct.Cl. 687, 688–90, 86 F.Supp. 905 (1949), the old Court of Claims dismissed a case under Section 1500 when the complaint had been filed after the Tax Court dismissed a petition containing the same claims, but before appeal from the Tax Court was taken to the D.C. Circuit.[11] In the subsequent *Tecon* case, that court reconciled *Maguire* with its announcement of a "time-of-filing" rule by noting that "the Tax Court litigation antedated suit in this court." 170 Ct.Cl. at 400 n. 3, 343 F.2d 943. The *Maguire* Court, however, expressly declined to decide whether the Tax Court was a court

for purposes of Section 1500, and clearly rested its decision on the appeal that was pending. 114 Ct.Cl. at 689–90, 86 F.Supp. 905. A better reading of *Maguire* would be to recognize that it reflected a "time-of-decision" rule, see *UNR*, 962 F.2d at 1023, the rejection of which has been recognized by the Federal Circuit in banc, see *Loveladies*, 27 F.3d at 1548–49 & n. 10, and thus is no longer good law. *Hardwick*, 72 F.3d at 886 ("this court in *Loveladies I* acknowledged the continuing vitality of *Tecon* as an established precedent").

█ The Court concludes that, once a claim is dismissed or denied, it is no longer pending in another court, for purposes of Section 1500, until a motion for reconsideration or notice of appeal is filed. While this may seem to be a peculiar rule, it is a rule mandated by Section 1500, and in that sense is no more peculiar than the rule that we may take jurisdiction of a case one day before the same claims are filed in another court, but not one day after, or that we may assume jurisdiction one day after an appeal containing the same claims is dropped but not one day before. Jurisdictional statutes are the province of the Congress, not this Court.

█ Applying Section 1500 to the facts of this proceeding, our Court properly assumed jurisdiction over the claims of *Young I* when that complaint was filed. This brings us back to the question of what can be done regarding the procedural irregularity of *Young I's* existence at the time *Young II* was filed in this Court. As noted above, the same claims cannot be before this Court in two separate cases at the same time. The Youngs had moved for an order dismissing *Young I* without prejudice, and had filed *Young II* under the mistaken belief that this order had already issued.[12] The order did

under the rule that the relevant time for determining if a claim is pending is when the motion to dismiss is considered, not when the complaint was filed, contra *Keene Corp.*, 508 U.S. at 207–09, 113 S.Ct. 2035.

**11.** *See also Donnelly v. United States*, 28 Fed.Cl. 62, 64–65 (1993). In *Donnelly*, the plaintiff conceded the issue that its claim was pending in the district court at the time the complaint was filed

in our Court, even though that claim was dismissed and not yet appealed. This concession undercuts any relevance the opinion otherwise would have.

**12.** They stated in their notice of related case, filed contemporaneously with the complaint in *Young II*, that *Young I* was already dismissed.

not issue for another 15 days, and was not retroactive. Thus, the Youngs were asking this Court to take jurisdiction over claims in *Young II* that the Court was already exercising jurisdiction over, but in the form of *Young I*.

Under these circumstances, taking into account the Youngs' confusion over whether exhaustion of administrative remedies was required (it was not) and their recognition, in their motion to dismiss *Young I*, that a more definite statement of their claims was needed-and noting that no answer had yet been filed at the time the Youngs filed their second complaint-the Court concludes that the Youngs' filing should have been treated as an amendment to their complaint in *Young I*. Just as their subsequently-filed notice of appeal did not divest this Court of jurisdiction over the claims in *Young I*, it also would not divest the Court of jurisdiction over an amendment to explain more fully these claims. This is consistent with the judicial practice of treating papers filed by *pro se* litigants according to their substance and not the labels mistakenly placed on them.

> As the Supreme Court recently explained: Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.... They may do so in order to avoid an unnecessary dismissal, ... to avoid inappropriately stringent application of formal labeling requirements, ... or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.

*Castro v. United States*, —— U.S. ——, ——-——, 124 S.Ct. 786, 791–92, 157 L.Ed.2d 778 (2003) (citations to opinions of twelve Circuits omitted). *Castro* concerned prisoners' habeas claims, and thus cited every Circuit but ours in this discussion. This convention, however, has been followed by the Federal Circuit and our Court, as well. *See, e.g., Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed.Cir.2002) (recognizing that, regarding *pro se* litigants, "a court of appeals may appropriately be less stringent in requiring that the issue [on appeal] have been raised explicitly below"); *Kelley v. Sec'y*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (agreeing that "leniency with respect to mere formalities should be extended to a *pro se* party," such as considering a letter to be a summons and complaint); *Blum v. United States*, 227 Ct. Cl. 555, 558, 1981 WL 21399 (1981) ("While plaintiff Blum has not raised this ground of recovery himself, we do so for him since he is acting *pro se*."); *Huffine v. United States*, 25 Cl.Ct. 462, 463 n. 5 (1992) (treating a *pro se* litigant's discovery motion made under one rule as "a more appropriate motion" under another rule).

This "recharacterization" is, of course, a variant of the rule that a charitable leniency should be extended to the pleadings of *pro se* litigants. The Supreme Court initially recognized this rule in cases brought against public officials, see *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which suggests that it might be particularly relevant to a Court like ours-where the party to be inconvenienced by the imprecise claims and arguments of uncounseled litigants is not another private citizen, but the government that represents them and is financed by their tax dollars. It is not surprising, then, to find that the predecessor to the Federal Circuit adopted this rule before the Supreme Court did. *See, e.g., Clinton v. United States*, 191 Ct.Cl. 604, 605, 423 F.2d 1367 (1970) (recognizing "the practical impossibility that [*pro se* litigants] can be expected to prepare pleadings according to the formal requirements that can be demanded of attorneys"); *Ruderer v. United States*, 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969) ("As often with *pro se* plaintiffs, we have strained our proper role in adversary proceedings to the limit, searching this lengthy record to see if plaintiff has a cause of action somewhere displayed.").

Obviously, the Youngs had filed their motion to dismiss and their second complaint in an effort, confused as it was, to perfect this Court's jurisdiction, not to forfeit it. Neither the Court nor, it can be assumed, the defendant, see *Mitchell v. United States*, 44 Fed. Cl. 437, 440–41 (1999) (recognizing that the special burden created by *pro se* cases should be shared by the government under its obli-

gation "to see that justice is done for its citizens"), would have acceded to this request had it been realized that by this procedure the unrepresented plaintiffs might lose the opportunity to have the merits of their case decided.[13] The Court determines that it is thus appropriate, under RCFC 60(b) ("Rule 60(b)"), to vacate the judgment that· dismissed *Young I* without prejudice.[14]

■ Rule 60(b) specifies that its relief "from final judgment, order, or proceeding" must be "[o]n motion," but does not indicate whether this motion may be by the Court, *sua sponte*. The text of the rule is indeterminate. The first sub-part of this rule, concerning clerical mistakes, expressly allows corrections "by the court at any time of its own initiative or on the motion of any party." RCFC 60(a). On the other hand, Rule 60(b) merely references a "motion" upon which the Court may act, with no specification as to who must bring it. No published opinion of our Court addresses this question. This rule, however, mirrors Rule 60 of the Federal Rules of Civil Procedure. The Circuit split on whether district courts may on their own grant relief under that rule is four-to-two in favor of a court's power to do so, *see United States v. Pauley*, 321 F.3d 578, 581 n. 1 (6th Cir.2003) (collecting authorities showing

Sixth and Tenth Circuits against and Second, Fourth, Fifth, and Ninth Circuits in favor). This Court opts to follow the majority, and notes that since it is not uncommon for cases to be dismissed *sua sponte* for lack of jurisdiction or failure to state a claim, it is only fair that this "remedial provision" that is to be "liberally construed for the purposes of doing substantial justice," *Patton v. Secretary of Dept. of Health & Human Services*, 25 F.3d 1021, 1030 (Fed.Cir.1994) (citation omitted), be similarly employed to reinstate cases.

■ There are six grounds for relief under Rule 60(b), with the final, catch-all exception of "any other reason justifying relief from the operation of the judgment" being available only if each of the other five do not apply. *See Freeman v. Sec'y of Dept. of Health & Human Servs.*, 35 Fed.Cl. 280, 282–83 (1996); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The Court does not find that any of the first five reasons fit the facts of this particular case.[15] But there is a very strong reason that justifies relief from the dismissal of *Young I*. The Youngs had moved for that dismissal to be without prejudice, the defendant did not op-

13. Responding to the Youngs' argument that the statute of limitations might prevent them from refiling a complaint at this time, the government has taken the position that "it is likely that plaintiffs may be able to re-file their claim" because of "the doctrine of equitable tolling." Def.'s Reply Pls.' Resp. Def.'s Mot. Dismiss at 3. The Court does not reach this issue.

14. Rule 60(b) reads, in relevant part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ...; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after judgment, order, or proceeding was entered or taken.

15. It is arguable that the first reason for relief from judgment could be stretched to cover the

circumstances of this case. This reason encompasses "mistake, inadvertence, surprise, or excusable neglect." RCFC 60(b)(1). It does not appear that mistaken interpretation of the procedural rules by a *pro se* litigant falls within this category. *See Bennett v. United States*, 31 Fed.Cl. 753, 755 (1994). And while the Federal Circuit has stated that this category includes "judicial error," *Patton*, 25 F.3d at 1030, this case's complications, recounted in the text above, due to the *pro se* status of the Youngs distinguish these proceedings from a garden variety "error." Moreover, a motion for this reason must be brought "not more than one year after the judgment, order, or proceeding was entered or taken." RCFC 60(b). Because the defendant waited until eleven months and one week after *Young I* was dismissed before filing the instant motion to dismiss, despite having known of the Young's Eighth Circuit appeal for over nine months (and for six weeks before it filed its initial motion to dismiss), as a practical matter this Court could not have determined the problem within the one-year period. Under these circumstances, it would be contrary to the interests of justice to stretch this remedial rule in a manner that would, in effect, punish the Youngs for defendant's delay.

pose dismissal without prejudice, and the Court entered an order providing that this dismissal be without prejudice. It was the intention of everyone involved that the dismissal of *Young I* not harm, impair, or forfeit the legal rights of the Youngs.[16] Yet this forfeiture of rights might result given the interplay of Section 1500 and 28 U.S.C. § 2401, the statute of limitations for bringing suit in this Court.[17]

This is not a case in which a plaintiff's "free, calculated, deliberate choices" were later regretted. *See Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950). The Youngs were not pursuing litigation strategies on advice of counsel that later turned sour. *But see Solitron Devices, Inc. v. United States*, 16 Cl.Ct. 561, 564–66 (1989). Rather, these *pro se* parties were merely trying to make certain that our Court did have jurisdiction over their claims, a goal so worthy that both this Court and the defendant saw fit to join in it. This presents a truly extraordinary situation in which the only sure means of obtaining that which was sought in the Court's order in *Young I*-a dismissal that would be without prejudice-is to vacate that order and judgment. Accordingly, this Court will exercise its power, under RCFRC 60(b)(6), "to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

This Court properly assumed jurisdiction over the claims in this case at the time that *Young I* was filed. The Court has determined that the complaint filed in *Young II* should have been filed as an amended complaint in *Young I*, and accordingly treats it as such. Thus, Section 1500 does not preclude this Court's jurisdiction over the claims contained in the Youngs' second complaint.

**16.** As the Second Circuit put it, "[i]mplicit in the right to self-representation is an obligation of the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," a right that "should not be impaired by harsh application of technical rules." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983).

**17.** *But see* note 13, above. Even if the statute of limitations period had been equitably tolled, it

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is DENIED. The Clerk of the Court is directed to do the following:

1. Reinstate case number 02–773C;

2. treat the complaint filed in case number 02–1368C as an amendment to the complaint in case number 02–773C; and

3. consolidate the files so that all documents in 02–1368C are treated as if filed in case number 02–773.

The parties shall file a Joint Preliminary Status Report no later than June 1, 2004.

**IT IS SO ORDERED.**

would unduly complicate this matter to have the *Young II* complaint re-filed as a new case-for instance, the Court's rulings on defendant's first motion to dismiss would no longer be applicable, as we would have lacked jurisdiction to decide it.

